109 N.J. 348 (1988)
537 A.2d 667
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
D.R., DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
The Supreme Court of New Jersey.
Argued September 29, 1987.
Decided February 9, 1988.
*350 Steven M. Gilson, Designated Counsel, argued the cause for appellant and cross-respondent (Alfred A. Slocum, Public Defender, attorney).
Larry R. Etzweiler, Deputy Attorney General, argued the cause for respondent and cross-appellant (W. Cary Edwards, Attorney General of New Jersey, attorney; Larry R. Etzweiler *351 and Richard W. Berg, Deputy Attorney General, of counsel and on the briefs).
The opinion of the Court was delivered by STEIN, J.
In this appeal we confront a serious and recurring legal issue in child sexual abuse prosecutions: the admissibility of the child's out-of-court account of the sexual assault. Defendant, convicted on three counts charging sexually abusive conduct with his two-and-one-half year old granddaughter, challenges as plain error the testimony of a non-treating psychologist that recounted the child's graphically descriptive explanation of the sexual contact. Other than the defendant's confession, which he repudiated during his trial testimony, the victim's hearsay statements were the most persuasive evidence of defendant's guilt.
Acknowledging that the victim's out-of-court statements were inadmissible under existing exceptions to the hearsay rule, the Appellate Division, relying primarily on Evidence Rule 5, adopted a "heretofore unstated" exception to the hearsay rule that would authorize admissibility of a child's out-of-court statements concerning sexual abuse if made to a parent, confidant, physician, or other professional under circumstances that afford "sufficient indicia of reliability to justify admission." State v. D.R., 214 N.J. Super. 278, 293, 296-97 (1986). The court determined that the out-of-court statements in this case were inherently reliable, sustained their admissibility under the newly-adopted hearsay exception, and affirmed defendant's convictions. Id. at 298, 300.
We are in full agreement with the Appellate Division's conclusion that the difficult problems of proof in child sex-abuse cases would be alleviated by a modification of the hearsay rule that addresses the admissibility of out-of-court victim statements such as the one at issue here. Our concept of the appropriate form of such a modification differs somewhat from *352 that proposed by the Appellate Division. However, we hold that the recognition of such a fundamental change in the hearsay rule solely by judicial decision is inconsistent with the procedure set forth in the Evidence Act, 1960, that involves collaboration among all three branches of government. N.J.S.A. 2A:84A-33 to -45. In our view, so significant a modification of the Rules of Evidence should be adopted in accordance with the prescribed statutory procedure, which as explained below we shall initiate in this opinion. This compels the conclusion that the admission of the victim's out-of-court statement in this case, unauthorized by any existing exception to the hearsay rule, was plain error since it was clearly capable of producing an unjust result. R. 2:10-2. Accordingly, we reverse the conviction and remand the matter for a new trial.

I
The material facts are set forth in detail in the Appellate Division opinion, 214 N.J. Super. at 280-84, and for our purposes a brief summary will suffice. During 1983 the parents of the alleged victim, N.R., were embroiled in a bitter matrimonial proceeding. Because N.R.'s mother, who retained custody, resisted her husband's requests for visitation, an order was entered in April 1983 permitting visitation during two days each week while the child was at the home of her paternal grandparents. The final judgment of divorce, entered in December 1983, also provided for weekly visitation of N.R. by her father at the defendant's home during a visitation period beginning each Friday morning and ending Saturday evening.
In November 1983, N.R. began to exhibit behavioral changes that included tantrums and interruption of sleep. She also complained of vaginal soreness. N.R.'s pediatrician examined her in February 1984. Although he found no physical evidence of sexual abuse, he suggested to N.R.'s mother that she contact the New Jersey Division of Youth and Family Services (DYFS) *353 in order to investigate the possibility that acts of sexual abuse had taken place.
Shortly thereafter, N.R. was questioned by personnel from DYFS and from the Somerset County Prosecutor's Office. This in turn led to an interrogation of defendant in February 1984 by Investigator Mazzei of the Somerset County Prosecutor's Office. Defendant initially denied any sexual contact with N.R. After Investigator Mazzei referred to specific allegations by N.R., exhibited drawings made by N.R. with circles designating areas of physical contact, and offered to play a tape recording of N.R.'s statements, defendant admitted that on one occasion in January 1984 he had engaged in sexual contact with N.R. Specifically, he acknowledged that he had inserted his penis into the child's mouth, an act of "sexual penetration," N.J.S.A. 2C:14-1(c), that constitutes aggravated sexual assault by virtue of defendant's supervisory relationship with N.R. N.J.S.A. 2C:14-2(a). He also admitted that he had allowed the child to touch and kiss his penis and to incidental contact with N.R.'s vagina, acts of "sexual contact," N.J.S.A. 2C:14-1(d), that constitute sexual assault because of N.R.'s age. N.J.S.A. 2C:14-2(b). At Investigator Mazzei's request, defendant repeated his confession so that it could be tape-recorded.
At trial the tape recorded confession was played for the jury. Defendant testified and repudiated his admissions. He stated that he was pressured to fabricate a confession by Investigator Mazzei's threats to resume interrogation of his granddaughter and to interrogate his wife, who had a medical history that suggested susceptibility to nervous strain. He said that the content of his statement was suggested to him by Mazzei, who assured him that the investigation would be over if he was cooperative. Defendant testified that he fabricated his statement to spare his wife and granddaughter any further involvement in the investigation.
As part of its direct case, the State sought to offer the testimony of the victim, who was then just over three years old. *354 The trial court advised counsel that if the victim was found competent to testify, see Evid.R. 17, she would testify from a separate room in the presence of only the prosecuting attorney and defense counsel. Her testimony was to be seen and heard by the jury through the use of closed circuit television equipment. Defendant and his counsel would be able to communicate privately during the testimony. The procedure contemplated by the trial court has since been specifically authorized by statute. See L. 1985, c. 126, § 1 (codified at N.J.S.A. 2A:84A-32.4).[1]
*355 The trial court conducted a hearing out of the jury's presence to determine the victim's competency and concluded that she would not be permitted to testify. The court observed:
I am not so sure she even has the ability at this age to deal with the concept of lying and telling the truth. She seems to respond to those questions on some occasions, but on other occasions she doesn't. And for that reason I don't think it would be appropriate to permit her to testify.
Aside from defendant's admissions, the most incriminating evidence at trial was the testimony of Dr. Martin Krupnick, a clinical psychologist specializing in emotional disorders resulting from incest and child sexual assaults. Dr. Krupnick was engaged by the Somerset County Prosecutor's Office. In September 1984  eight months after the sexual contact acknowledged by defendant  Dr. Krupnick interviewed N.R. on three occasions. During one of these interviews, he gave N.R. anatomically correct dolls to facilitate her ability to communicate with him. During cross-examination he acknowledged that he had requested the Somerset County Prosecutor's Office to send him the dolls after he had been informed that N.R. was able to use the dolls to explain what had happened to her. He also conceded that N.R. had been given prior opportunities to handle the dolls by people in the prosecutor's office, and that reports from that office indicated that "the child named the dolls Baby N and Grandpa R."
Dr. Krupnick testified at trial that N.R. was suffering from post-traumatic stress disorder, which he described as behavior resulting from a major traumatic event outside the normal human experience. He expressed the opinion that the trauma that caused her condition was a sexual assault. To establish the basis for Dr. Krupnick's opinion, the following testimony was elicited without objection by defendant's counsel:
Q. Other than her behavior that was reported to you, you say that you noticed specific behavior of hers yourself when you examined her that you felt was significant in formulating your diagnosis?
A. Yes. When using the anatomically correct dolls  these are dolls that are used to allow a child to facilitate an expression of what has gone on in her past experience, and using these anatomically correct dolls, she was able to act out *356 and demonstrate a sexual assault, specifically talked about the penis being placed in the mouth of the young female.
During that time she showed a lot of anxiety, fear. She was very uncomfortable and requested that we terminate rather quickly from that part of the examination.
Q. Did she use the doll as a specific person?
A. Yes. She named the male doll Grandpa [R] doll and the female doll baby [N].
At the conclusion of the trial defendant was found guilty of aggravated sexual assault, N.J.S.A. 2C:14-2(a), sexual assault, N.J.S.A. 2C:14-2(b), and endangering the welfare of a child, N.J.S.A. 2C:24-4(a). The trial court imposed concurrent sentences of fifteen years, seven years, and four years for the respective offenses.
The Appellate Division first determined that Dr. Krupnick's expert testimony concerning the victim's post-traumatic stress syndrome caused by a sexual assault was sufficient, even without the victim's incriminatory statements, to constitute independent corroborative proof adequate to sustain defendant's conviction. 214 N.J. Super. at 284-85. See State v. Lucas, 30 N.J. 37, 51-58 (1959) ("uncorroborated extra-judicial confession cannot provide the evidential basis to sustain a conviction").
Focusing on that aspect of Dr. Krupnick's testimony that recounted the victim's use of dolls to describe the defendant's sexually assaultive conduct, the Appellate Division correctly concluded that the victim's words and acts were testimonial in nature and therefore "statements," Evid.R. 62(1), constituting hearsay because they were not made in court but included in Dr. Krupnick's testimony.[2]Evid.R. 63. See 214 N.J. Super. at 286-88. The court also determined that the victim's statements to the Doctor were not admissible under the contemporaneous statement exception, Evid.R. 63(4)(a), or as spontaneous *357 utterances. Evid.R. 63(4)(b). See id. at 287-93. The court reasoned that
although N.R. was traumatized by her experience, her description of the sexual activity to Dr. Krupnick was not accompanied by evident "stress of nervous excitement" as required by Evid.R. 63(4)(b). There was related distress, but this was observed after the game with the dolls. Also, the statements were made far removed from the act, some nine to ten months later. [Id. at 292-93].
Concluding that the victim's statements were not admissible under any of the recognized exceptions to the hearsay rule, the Appellate Division acknowledged the need for an exception that would allow into evidence, under certain conditions, testimony of out-of-court statements made by a young child relating acts of sexual abuse. The Appellate Division determined that it was empowered by Evid.R. 5 to recognize such an exception "as a matter of the common law growth of evidence law," 214 N.J. Super. at 293, and set forth the following standards defining the new exception:
[I]t appears that a court in deciding whether to admit the child's statement must determine (a) that the statement was by a child of tender years concerning the abuse or neglect of the child or sexual conduct or practices involving the child and was made to a parent or other natural confidant or to a physician or other professional at a time and under circumstances which provide sufficient indicia of reliability to justify admission; (b) that if the child is unavailable as a witness, as provided in Evid.R. 62(6), there is corroborative evidence of the act or acts described in the statement; and (c) that there was notice of the proponent's intention to offer the statement given in sufficient time in advance of the hearing as to provide the adverse party a fair opportunity to prepare to meet it. [214 N.J. Super. at 296-97 (footnote omitted).]
Applying the newly-established hearsay exception, the court determined that the victim's out-of-court statements were admissible. It concluded that the statements possessed "inherent reliability" on the basis of various factors, including
the evident naivete of the victim; her relating of the event to the psychologist under clinical conditions accepted by the court in admitting his testimony for purposes of stating the diagnosis; the child's exhibiting knowledge of sexual practices beyond her reasonably anticipated imagination; the related distress exhibited by her after relating the events and detailing the participants; the inability to procure other corroborative evidence, since only the child and defendant would have been present; defendant's confession and the congruity between the confession and the child's story; and defendant's familiarity with the statements and his opportunity to refute them. Therefore, even though the *358 statements are to be considered hearsay, they fall within what we now find to be an exception. We thus perceive no error in the failure of the trial judge to give a limiting instruction pursuant to Evid.R. 6. [214 N.J. Super. at 298 (footnote omitted).]
Finally, the Appellate Division rejected defendant's contention that the sentence was excessive, but agreed that the conviction for endangering the welfare of a child, N.J.S.A. 2C:24-4(a), should have been merged with the convictions for aggravated sexual assault and sexual assault, vacating the separate sentence for that offense. 214 N.J. Super. at 298-300. We granted defendant's petition for certification, as well as the State's cross-petition addressed solely to the issue of merger. 107 N.J. 104, 105 (1987).

II
We first consider the need for an expansion of the recognized exceptions to the hearsay rule to authorize under certain conditions the admissibility of testimony relating the out-of-court statements of a child victimized by sexual abuse. Next, we address the standards that should govern admissibility of such testimony. We then focus on the procedure through which such a modification of the hearsay rule should be adopted. Finally, we consider the Appellate Division's disposition of the merger issue.

A. The need for an additional exception to the hearsay rule.
Courts, legislatures, and commentators that have focused on the problems of proof in child sex abuse prosecutions appear to agree that testimony by the victim is often the indispensable element of the prosecution's case. See, e.g., State v. R.W., 104 N.J. 14, 16 (1986). Typically, in such cases the assailant is a close relative, a member of the household, or a trusted acquaintance. Acts of child sexual abuse are seldom committed in the presence of anyone other than the perpetrator and the victim. Frequently, there is no visible physical evidence that acts of sexual molestation have occurred. Absent a confession, the *359 victim's account of the sexual abuse may be the best and sometimes the only evidence that a sexual assault has taken place. See National Legal Resource Center for Child Advocacy and Protection, Young Lawyers Division, American Bar Association, Recommendations for Improving Legal Intervention in Intrafamily Child Abuse Cases, (J. Bulkley ed. 1982) at 30, 36. (ABA Recommendations).[3]
Moreover, a child victim's spontaneous out-of-court account of an act of sexual abuse may be highly credible because of its content and the surrounding circumstances. Young children, having no sexual orientation, do not necessarily regard a sexual encounter as shocking or unpleasant, and frequently relate such incidents to a parent or relative in a matter-of-fact *360 manner. See Note, Comprehensive Approach, supra, 83 Colum.L.Rev. at 1756-57; Note, Two Legislative Innovations, supra, 98 Harv.L.Rev. at 817 n. 80. Several commentators have observed that child victim accounts of incidents of sexual abuse are highly reliable. See, e.g., Skoler, supra, 18 J. Marshall L.Rev. at 44-45 ("The overwhelming opinion of mental health workers, social welfare workers, and police investigators is that children almost never make false [sexual abuse] reports."). Accord ABA Recommendations, supra at 35 (courts treat children's statements of abuse "as very trustworthy").
In comparison, the reliability of in-court testimony of a young child victimized by a sexual assault is often affected by the stress of the courtroom experience, the presence of the defendant, and the prosecutor's need to resort to leading questions. Note, Comprehensive Approach, supra, 83 Colum.L.Rev. at 1751-52; Skoler, supra, 18 J. Marshall L.Rev. at 6. The lapse of time between the sexual assault and the trial can affect the child's ability to recall the incident. In cases where the accused is a member of the child's family or household, the victim may be urged or coerced to recant. In general, the courtroom setting is intimidating to children and often affects adversely their ability to testify credibly. Note, Minnesota's Exception, supra, 11 Wm. Mitchell L.Rev. at 806; Skoler, supra, 18 J. Marshall L.Rev. at 6.
In recent years there has been a significant increase in media coverage and public awareness of the problems of child sexual abuse. This heightened public sensitivity to the frequency of child sexual abuse has provoked a widespread criticism and re-examination of evidence rules and trial procedures affecting the prosecution of child sex abuse cases. A study of particular significance was undertaken by the American Bar Association's National Legal Resource Center for Child Advocacy and Protection, resulting in the publication of Recommendations for Improving Legal Intervention in Intrafamily Child Sexual Abuse Cases, supra. These Recommendations urge that "[a] child victim's out-of-court statement of sexual abuse should be *361 admissible into evidence where it does not qualify under an existing hearsay exception, as long as: (1) the child testifies; or (2) in the event the child does not testify, there is other corroborative evidence of the abuse. ABA Recommendations, supra § 4.3, at 34. In support of its proposal, the Recommendations rely on the general trustworthiness of children's complaints concerning sexual abuse, the pressing need for such evidence, inadequacy of existing hearsay exceptions to permit admission of such statements, and the tendency of courts to invoke tortured interpretations of the "excited utterance" exception in order to sustain admissibility of a child's out-of-court statement. Id. at 34-35.
Responding to increased recognition of the difficult proof problems in child sex abuse prosecutions, a number of states have enacted statutes specifically designed to modify the hearsay rule in order to permit admission into evidence of a child's out-of-court statement, provided the statement is determined to be reliable. The State of Washington was the first to adopt such a statute, Wash. Rev. Code Ann., § 9A.44.120 (Supp. 1987), which provides:
A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings in the courts of the state of Washington if:
(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness: Provided, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement.
*362 Several states have enacted their own hearsay exception modeled on this statute. See Fla. Stat. Ann. § 90.803(23)(a) (West Supp. 1987); Ind. Code Ann. § 35-37-4-6 (Burns Supp. 1986); Minn. Stat. Ann. § 595.02(3) (Supp. 1987); S.D. Codified Laws Ann. § 19-16-38 (1987); Utah Code Ann. § 76-5-411 (Supp. 1987); cf. Colo. Rev. Stat. § 18-3-411(3) (1986) (providing for admission of child's hearsay without need for corroboration or determination of reliability); Ga. Code Ann. § 24-3-16 (Supp. 1987) (providing for admission of child's hearsay statement only if child testifies at trial). Both state and federal courts have authorized the use of hearsay statements by child sex abuse victims under the residual hearsay exception, Fed.R.Evid. 803(24), infra at 372 n. 12, and its state counterparts. See United States v. Dorian, 803 F.2d 1439 (9th Cir.1986); State v. Robinson, 153 Ariz. 188, 735 P.2d 798 (1987) (en banc); State v. Taylor, 103 N.M. 189, 704 P.2d 443 (Ct.App. 1985); State v. Hollywood, 67 Or. App. 546, 680 P.2d 655 (1984), rev. denied, 298 Or. 553, 695 P.2d 49 (1985).
The substantial increase in reported incidents of child sexual abuse, and the resulting public concern, has also generated an abundance of literature dealing with the difficult problems of proving child sexual abuse. See supra at 359 n. 3. Almost without exception the commentators agree on the need to modify the hearsay rule to allow a child victim's reliable out-of-court statement to be admitted into evidence. While acknowledging the possibly adverse impact on a defendant's right of confrontation and cross-examination, the clear consensus of experts familiar with child sex abuse prosecutions is that the unique limitations on the availability of evidence in such cases, as well as the demonstrated reliability of sex abuse complaints by child victims, justify recognition of such a modification of the hearsay rule. See, e.g., Skoler, 18 J. Marshall L.Rev. at 46-48; Note, Comprehensive Approach, supra, 83 Colum.L. Rev. at 1763-66; Note, Two Legislative Innovations, supra, 98 Harv.L.Rev. at 826-27.
*363 We find the cumulative weight of the reasoning underlying the ABA Recommendations, the legislative enactments in several states, and the analysis of numerous commentators to be thoroughly persuasive. We are convinced that the adoption of a further modification to the hearsay rule, Evid.R. 63, is necessary and appropriate in order to authorize, under certain circumstances, the admissibility in a criminal prosecution, of a child's out-of-court statement concerning acts of sexual abuse. We are of the view that the adoption and application of such a modification of the hearsay rule in criminal prosecutions,[4] in conjunction with the statutory procedure permitting a child victim of sexual abuse to testify at trial on closed circuit television out of the presence of the defendant, N.J.S.A. 2A:84A-32.4, will enable the judicial system to deal more sensibly and effectively with the difficult problems of proof inherent in child sex abuse prosecutions. However, any such modification of the hearsay rule must adequately recognize and protect the substantial constitutional interests of defendants in such proceedings.[5]

B. Standards of admissibility of child's out-of-court statement in sex abuse prosecutions.
There is general agreement that a prerequisite to the admissibility of a child's out-of-court statement concerning sexual abuse is that it possess sufficient indicia of reliability. The standard adopted by the Appellate Division in this case was that the statement be "made to a parent or other natural *364 confidant or to a physician or other professional at a time and under circumstances which provide sufficient indicia of reliability to justify admission." 214 N.J. Super. at 297. The Washington statute does not specifically limit the people to whom such a statement may be made but requires the court to conduct a hearing in order to determine that "the time, content and circumstances of the statement provide sufficient indicia of reliability." Wash. Rev. Code Ann. § 9A.44.120(1) (Supp. 1987). The ABA Recommendations also do not specifically limit the persons to whom such statements may be made, but list as factors to be considered by a court in determining admissibility "the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, the reliability of the assertion, and the reliability of the child or witness." ABA Recommendations, supra, § 4.3 at 5.[6] In this case the trial court made no specific determination concerning the reliability of the child victim's out-of-court statements. We express no view on whether such statements, in the context of the surrounding events and circumstances, possess "sufficient indicia of reliability" to warrant their admission, that issue to be resolved by the trial court in the event of retrial.
*365 There is also general agreement that the proponent of the statement must notify the "adverse party" sufficiently in advance of trial of the statement's content and his intention to offer it at trial. The Appellate Division, 214 N.J. Super. at 297, the Washington statute, and the ABA Recommendation concur on this requirement. We note, however, that no notification of the prosecutor's intention to introduce the victim's out-of-court statements was provided to defendant in this case.
The most difficult question, and one that has received disparate treatment, is whether a child's incompetency to testify at trial should preclude admissibility of the child's out-of-court statement. The Appellate Division's formulation required either that the child testify at trial, or if unavailable to testify within the meaning of Evid.R. 62(6) (defining unavailability to include "inability to testify because of a then existing mental disability"), that there be corroborative evidence of the acts described in the statement. 214 N.J. Super. at 297. As noted, the trial court in this case, after questioning the child in chambers, concluded that she was incompetent to testify. Since the Appellate Division held the out-of-court statements to be admissible, it evidently concluded that N.R.'s incompetency to testify constituted "unavailability" pursuant to Evid.R. 62(6), although it did not deal with the issue specifically.
The Appellate Division, 214 N.J. Super. at 299, and the ABA Recommendations, supra, § 4.3 at 5, concur that there must be corroborating evidence of the statement if the child is unavailable to testify. The Washington statute requires that the child testify at trial or, if "unvailable," that there be corroborative evidence of the act of sexual abuse. § 9A-44-120(2). However, the Supreme Court of Washington has held that the incompetency of a child to testify does not necessarily constitute "unavailability" for purposes of the Washington statute. In State v. Ryan, 103 Wash.2d 165, 691 P.2d 197 (1984) (en banc), defendant was convicted of committing "indecent liberties" on two young boys. At trial neither victim testified, on the basis of stipulations that they were not competent. Out-of-court *366 statements made by one child to his mother and aunt, and by the other child to his mother were admitted pursuant to Washington's then recently adopted "tender years" exception statute, § 9A.44.120, supra, after the trial court determined that the defendant's confession constituted adequate corroboration of the sexual acts.
Defendant challenged his conviction on several grounds, claiming particularly that the admission of the alleged victims' out-of-court statements violated his right of confrontation under the sixth amendment to the United States Constitution.[7]
The Washington Supreme Court, invoking the standards established in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), for determining when the admission of hearsay evidence can be reconciled with the requirements of the confrontation clause, observed that Roberts required (1) availability of the declarant for cross-examination or a demonstration of unavailability, and (2) assurances of reliability. State v. Ryan, supra, 103 Wash.2d at 170, 691 P.2d at 202. Noting that "incompetency and unavailability serve separate purposes, and mean different things," id. at 171, 691 P.2d at 202, the Court held that a stipulation of incompetency was "too uncertain a basis to find unavailability" in the context of Roberts' holding that the State has a good-faith obligation to produce the declarant if possible. Id. at 172, 691 P.2d at 203. Moreover, the Court observed that if the trial court had examined the victims and found them incompetent to testify at trial, the hearsay statements "would be too unreliable for admission." Id. at 173, 691 P.2d at 203. Accordingly, the Washington Supreme Court reversed the convictions, concluding that neither the "unavailability" nor "reliability" prongs of the Roberts standard for *367 admission of hearsay had been satisfied. Id. at 179, 691 P.2d at 207.
The issue raised in the Ryan case, i.e., whether a ruling that a child witness is incompetent to testify at trial satisfies the "unavailability" requirement of Ohio v. Roberts, has generated significant disagreement. Some commentators equate incompetency with unavailability, arguing that a child's incompetency to testify at trial does not negate the reliability of the out-of-court statement or the justification for its admissibility. Note, Minnesota's Hearsay Exception for Child Victims of Sexual Abuse, 11 Wm. Mitchell L.Rev. 799, 815-20 (1985); Note, The Sexually Abused Infant Hearsay Exception: A Constitutional Analysis, 8 J.Juv.L. 59, 70-73 (1984); Note, Sexual Abuse of Children  Washington's New Hearsay Exception, 58 Wash.L. Rev. 813, 826-28 (1983) (citing Lancaster v. People, 200 Colo. 448, 615 P.2d 720, 723 (1980)).
A contrary view holds that it is incongruous for a trial court to conclude that a child's hearsay statement is sufficiently reliable to warrant its admission even though, months after the statement was made, the child is found incompetent to testify. The Georgia child victim hearsay exception apparently reflects this concern, limiting the admissibility of the hearsay statements to those cases where "the child is available to testify in the proceedings." Ga. Code Ann. § 24-3-16 (Supp. 1987). Commentators argue that if incompetency satisfies the Roberts test of unavailability, the prosecutor in a child sex abuse case would have little incentive to press for the child's competency to testify at trial. Note, Confronting Child Victims of Sex Abuse: The Unconstitutionality of the Sexual Abuse Hearsay Exception, 7 U. Puget Sound L.Rev. 387, 401-04 (1984); see Note, Two Legislative Innovations, supra, 98 Harv.L.Rev. at 817-22.
The resolution suggested by the ABA Recommendations and other authorities is to avoid the "incompetency/unavailability" *368 dilemma by eliminating the requirement of competency for child sex abuse victims. The ABA Recommendation provides:
4.1 Competency
Child victims of sexual abuse should be considered competent witnesses and should be allowed to testify without prior qualification in any judicial proceeding. The trier of fact should be permitted to determine the weight and credibility to be given to the testimony. [ABA Recommendations, supra § 4.1 at 5.]
The Commentary to the ABA Recommendations notes the growing trend among states to adopt their own version of Rule 601 of the Federal Rules of Evidence, which abolishes the presumption that a child is incompetent and leaves to the jury the determination of the weight and credibility of a child's testimony. Id. at 30; see Note, Two Legislative Innovations, supra, 98 Harv.L.Rev. at 819 n. 89 (observing that at least thirteen states have adopted an equivalent of Federal Rule 601). The Commentary also cites Professor McCormick for his advocacy of "allowing the testimony to come in for what it is worth with cautionary instructions to the jury, since the child may be the only person available who knows the facts." ABA Recommendations § 4.1 at 31. Professor Wigmore's treatise expresses a similar view:
A rational view of the peculiarities of child nature, and of the daily course of justice in our courts, must lead to the conclusion that the effort to measure a priori the degrees of trustworthiness in children's statements, and to distinguish the point at which they cease to be totally incredible and acquire suddenly some degree of credibility, is futile and unprofitable.... Recognizing on the one hand the childish disposition to weave romances and to treat imagination for verity, and on the other the rooted ingenuousness of children and their tendency to speak straightforwardly what is in their minds, it must be concluded that the sensible way is to put the child upon the stand to give testimony for what it may seem to be worth. [2 Wigmore, Evidence § 509 at 719 (Chadburn rev. 1979).]
Other commentators agree that the liberal use of children's testimony at trial should be encouraged. See Melton, Children's Competency to Testify, 5 Law & Human Behavior 73 (1981); see also State v. R.W., supra, 104 N.J. at 20 n. 2 (noting the "clinical evidence that children of the tenderest ages are *369 capable of testifying accurately about the nature of [sexual] abuse and the identity of the abuser").
In view of the constitutional concerns that a child's incompetency to testify may not satisfy the "unavailability" prong of Ohio v. Roberts, relaxation of the competency requirements for testimony by child sex-abuse victims appears to be particularly appropriate. See Note, Two Legislative Innovations, supra, 98 Harv.L.Rev. at 818-19 (arguing that unavailability should be found only if the State demonstrates "the impossibility of in-court testimony"). The admission into evidence of reliable out-of-court statements by a child victim in a sexual abuse prosecution obviously serves legitimate and important law enforcement interests. However, such a rule threatens the equally significant interests of the defendant, who seeks to exercise the basic rights of confrontation and cross-examination so essential to the jury's duty to assess the credibility of witnesses. Evidence Rule 17 would require the disqualification of a child victim "(a) * * * incapable of expressing himself concerning the matter so as to be understood by the judge and jury * * *," or "(b) * * * incapable of understanding the duty of a witness to tell the truth."[8] We conclude that the disqualification set forth in paragraph (b) of Evidence Rule 17 should not apply in a sexual abuse prosecution in which the victim's *370 out-of-court statement is offered in evidence. A finding that a child-victim is "incapable of understanding the duty * * * to tell the truth," and thus incompetent, is difficult to reconcile with a ruling that admits into evidence, insulated from cross-examination, the out-of-court statements of the same child made several months prior to trial. Cf. State in Interest of C.A., 201 N.J. Super. 28, 32 (App.Div. 1985) (reversing trial court's admission of children's out-of-court statements to parent as "excited utterances" but observing that "disqualification of the children as witnesses * * * does not foreclose admission of their [out-of-court] statements.").
In our view, a modification of the existing competency requirements for child witnesses in sex-abuse prosecutions would be an essential corollary to a modification of the hearsay rule that would admit into evidence reliable out-of-court statements made by the child victim. As we noted in State v. R.W., supra:
Complicating further the quest for truth, prosecutions of incestuous sexual offenses often occur against a background of bitter animosity between the parents of the child, frequently in the context of hateful divorce and custody battles, with each parent inevitably exerting influence on the child. Normal concerns touching upon the child's reliability as a witness are understandably heightened in such a setting. [104 N.J. at 16.][9]
Combining the admissibility of the child's out-of-court statements with a requirement that the child, if available, testify at trial (using when appropriate the closed circuit television procedure authorized by the Legislaure, N.J.S.A. 2A:84A-32.4), will afford the jury an opportunity to evaluate the testimony relating the child's out-of-court statements in the context of the child's communicative skills, demeanor, and credibility as a witness at trial. It also affords the defendant a right of cross-examination and limited confrontation, see N.J.S.A. *371 2A:84A-32.4, that would be lost if the child were disqualified due to incompetency.
If the child is uncooperative and uncommunicative as a witness, the jury, with appropriate instructions from the trial court, could consider that factor in assessing the value to be accorded the child's out-of-court statement. Potential excesses in leading questions or in cross-examination are well within the province of a trial court to control. We are also confident that trial courts will be aware of the possibly traumatic effects on a child of having to describe an act of sexual abuse in a court proceeding, even with the protections afforded by the closed circuit television procedure, and will be appropriately protective of the child's interest. On balance, however, we believe that if a child's out-of-court statement concerning an act of sexual abuse is to be admissible, that child should testify at trial in order to afford the jury an opportunity to assess the child's credibility and to afford the defendant the right of confrontation and cross-examination.[10]

C. Procedure for adopting a new exception to the hearsay rule and a modification of the competency requirements for child witnesses in sex abuse prosecutions.
In this case the Appellate Division, pursuant to Evid.R. 5, recognized a "heretofore unstated" exception to the hearsay rule "as a matter of the common-law growth of evidence law." 214 N.J. Super. at 293. Defendant asserts that this action by the Appellate Division exceeds the power of the judiciary possessed by virtue of article 6, section 2, paragraph 3 of the New Jersey Constitution of 1947.[11]
*372 Unlike the Federal Rules of Evidence, see Fed.R.Evid. 803(24), 804(b)(5),[12] which establish residual hearsay exceptions for statements not covered by one of the enumerated exceptions, a proposed residual relaxation rule was not adopted in the Evidence Act, 1960 (codified at N.J.S.A. 2A:84A-1 to -49). Report of the New Jersey Supreme Court Committee on Evidence 9-11 (1963). However, Evid.R. 5 of the New Jersey Rules of Evidence provides:
The adoption of these rules shall not bar the growth and development of the law of evidence in accordance with fundamental principles to the end that the truth may be fairly ascertained.[13]
Former Federal Judge Vincent P. Biunno, who was significantly involved in the combined efforts of the executive, legislative, and judicial branches that led to the Evidence Act, 1960, has commented on the intended scope of Rule 5:
This [Evid.R. 5] is not a rule of relaxation, and neither trial judges nor appellate courts are to so consider it.
The rules, whether enacted by statute or adopted by the Supreme Court with legislative concurrence, are essentially statutory in nature. To the extent that *373 a matter of evidence is dealt with by the rules, the rules are to be applied as written.
There will be areas in which evidence law will continue to develop on a case-by-case decisional basis.
* * * * * * * *
At the same time, it is not to be expected that the appellate courts will employ the decisional process on a case-by-case basis to modify the formal rules in the event it should seem that the applicable rules, as adopted, ought to be modified on the basis of experience or theory. In such situations the available flexible mechanism by which the Supreme Court initiates changes in the evidence rules is much more likely to be employed. Such questions mainly involve broad policy. [N.J.R.Evid., Preliminary Comments at xvii-xviii (1987 ed.).][14]
Our resolution of this issue is shaped by the historical debate over the power to adopt evidence rules and is influenced by the pragmatic resolution of this constitutional dilemma achieved by *374 the passage of the Evidence Act, supra. A brief discussion of the historical background will suffice, since the subject has been discussed elsewhere. See Rybeck v. Rybeck, 141 N.J. Super. 481, 509-10 (Law Div. 1976), appeal dismissed, 150 N.J. Super. 151 (App.Div. 1976), certif. denied, 75 N.J. 30 (1977); Brooks, Evidence, 14 Rutgers L.Rev. 390, 391-92 (1960). Although the 1942 draft of the proposed New Jersey Constitution would have conferred on the judiciary the exclusive power to adopt evidence rules, see Winberry v. Salisbury, 5 N.J. 240, 249 (1950), the 1947 Constitution grants the judiciary rule-making authority over "practice and procedure." Art. VI, § 2, ¶ 3. The Constitution is otherwise silent on the power to adopt rules of evidence. In Busik v. Levine, 63 N.J. 351, 367 (1973), Chief Justice Weintraub acknowledged the difficulty of classifying evidence as either "substance" or "procedure," conceding that both classifications are descriptive of different applications of the rules of evidence. That same conceptual difficulty in determining whether evidence was or was not within the judiciary's exclusive power to adopt rules of "procedure" led to an impasse in the late 1950s. During that period separate committees designated by the judiciary and the legislature studied proposed rules of evidence for New Jersey, but stalemated over which body had the power to adopt the rules. See Brooks, supra, 14 Rutgers L.Rev. at 391-92.
The deadlock was broken by the adoption of the Evidence Act, 1960, L. 1960, c. 52, which adopted as law Rules 1(1) through 1(13) (Definitions), Rule 2 (Scope of the Rules), and Rules 23 through 40 (Privileges). The Act also provided a mechanism for the adoption of additional rules, N.J.S.A. 2A:84A-33 to -49. The rationale for this pragmatic compromise was explained by Chief Justice Weintraub in Busik v. Levine:
We participated in a process whereby a code of evidence was adopted "wholesale," to use a word in the quotation above from Winberry. The rules of evidence were adopted cooperatively by the three branches of government *375 under the Evidence Act, 1960 after the Supreme Court and the Legislature conducted their separate studies. Under the statutory arrangement, some of the rules, notably those embodying privileges, were fixed in the statute itself while other rules, prepared by the Court after consideration at a Judicial Conference, were filed with the Legislature to become effective unless disapproved by a joint resolution signed by the Governor. Thus we did not pursue to a deadlock the question whether "evidence" was "procedural" and therefore, according to the Winberry dictum, the sole province of the Supreme Court. Nor were we deterred by the spectre of the criticism that, if "evidence" is "substantive," it was unseemly or worse for the Court to participate in the "wholesale" promulgation of substantive law. The single question was whether it made sense thus to provide for the administration of justice, and the answer being clear, we went ahead. We add that the United States Supreme Court, which does not have a constitutional grant of rule-making power as to practice and procedure, is pursuing a similar project in cooperation with the Congress. [63 N.J. at 367-68 (footnotes and citations omitted).]
Pursuant to the Evidence Act, 1960, the procedure for adopting new or revised rules requires that a draft of the proposed rule be entered on the agenda and discussed at a Judicial Conference, N.J.S.A. 2A:84A-34, publicly announced by this Court on "September 15 next" following the Judicial Conference and concurrently delivered to the President of the Senate, Speaker of the General Assembly, and the Governor. N.J.S.A. 2A:84A-35. Unless cancelled by a joint resolution of the Senate and Assembly signed by the Governor, the proposed rule becomes effective on July 1 next following the rule's announcement by the Court. N.J.S.A. 2A:84A-36. In addition, this Court may adopt or revise rules of evidence at any time, without presentation at a Judicial Conference, with the concurrence of the Senate and General Assembly reflected by a joint resolution adopted by those bodies and signed by the Governor. N.J.S.A. 2A:84A-38.
We need not and do not intend in this opinion to attempt to probe the outer limits of the judiciary's power to modify or adopt rules of evidence. We are satisfied, given the serious and far-reaching nature of the rule considered by the Appellate Division, that adoption of such a rule by judicial decision is *376 inappropriate. We come to that conclusion not on the basis of constitutional power, but as a matter of comity, with due regard both to the complexity of the subject matter and for the cooperative mechanism that has been relied on in the past to promulgate New Jersey's Rules of Evidence.
Accordingly, we shall invoke the procedure established by the Evidence Act, 1960, N.J.S.A. 2A:84A-33 to -45, to the end that the proposed new hearsay exception may take effect at the earliest possible date. We have set forth in Appendix A proposed amendments to the Rules of Evidence consistent with this opinion. In accordance with N.J.S.A. 2A:84A-38, we shall transmit these proposed amendments to the President of the Senate, the Speaker of the General Assembly, and the Governor. Upon the adoption of a joint resolution by the Senate and General Assembly and signed by the Governor, concurring in the proposed amendments to the Rules of Evidence, the amended Rules shall take effect on the date designated. We have elected not to proceed pursuant to N.J.S.A. 2A:84-34 to -36, requiring the submission of the proposed Rules to a Judicial Conference, because we are persuaded that this matter demands prompt attention.
Although we have determined that the proposed amendments to the Rules of Evidence, in the form set forth in Appendix A to this opinion, should be implemented as soon as the concurrence of the Legislature and the Governor has been obtained, there are undoubtedly aspects of the proposed amendments that would benefit from more deliberate study. Accordingly, we shall simultaneously refer to this Court's standing Committee on the Rules of Evidence the task of reviewing the proposed amendments and recommending to this Court any revisions or any additional amendments to the Rules of Evidence, not inconsistent with this opinion, that it deems appropriate. We particularly invite the Committee's attention to the need for modification of the competency requirements for child victims in sex-abuse *377 prosecutions where no out-of-court statement of the child is to be offered in evidence, as well as to the criteria for determining the reliability of a child victim's out-of-court statement.

III
In view of our conclusion that the admission of the victim's out-of-court statements constituted plain error and requires reversal of defendant's convictions, we address the merger issue solely to guide the trial court in the event the question is again presented after retrial. The Appellate Division, reversing the trial court, held that defendant's conviction for endangering the welfare of a child, N.J.S.A. 2C:24-4(a), must merge with his convictions for aggravated sexual assault, N.J.S.A. 2C:14-2(a), and sexual assault, N.J.S.A. 2C:14-2(b).
We recently had occasion to consider this same question in State v. Miller, 108 N.J. 112 (1987), in determining whether a defendant's conviction for endangering the welfare of a child, N.J.S.A. 2C:24-4(a), should merge with his conviction for aggravated sexual assault of his five-year-old daughter. In Miller, we held that "the crime of endangering the welfare of a child is aimed not only at specific conduct but also at the violation of the duty that a parent owes to a child." 108 N.J. at 118-19. We noted that the critical factor in the merger question presented in Miller derived from the "different interests protected by the statutes violated," id. at 118, and that although both convictions were "based on the same general conduct," the child endangerment conviction was "also directed at the defendant's violation of his parental duty." Id. at 120-21. Our reasoning and holding in Miller applies to the circumstances of this case and would preclude merger of the conviction under N.J.S.A. 2C:24-4(a). The same result would be reached by application of the relevant provision of the Code of Criminal Justice, N.J.S.A. 2C:1-8(a). We need not reach or resolve the *378 Attorney General's contention that the Code supersedes in all respects the common-law principles governing merger of convictions.
The judgment of the Appellate Division is reversed and the matter is remanded to the Law Division.
For reversal  Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN  7.
Opposed  None.

APPENDIX A

Proposed Amendments to the Rules of Evidence
1. Rule 63 shall be amended to read as follows:
Rule 63. Hearsay evidence excluded; exceptions.
Evidence of a statement offered to prove the truth of the matter stated which is made other than by a witness while testifying at the hearing is hearsay evidence and is inadmissible except as provided in Rules 63(1) through 63(33).
2. A new rule to be designated as Rule 63(33) shall be adopted to read as follows:
Rule 63(33). Statements by a child relating to a sexual offense
A statement by a child under the age of 12 relating to a sexual offense under the Code of Criminal Justice committed on, with, or against that child is admissible in a criminal proceeding brought against a defendant for the commission of such offense if (a) the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement at such time as to provide him with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to Rule 8(1), that on the basis of the time, content, and circumstances of the statement there is a probability that the statement is trustworthy; and (c) either (i) the child testifies at the proceeding, or (ii) the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse; provided that no child whose statement is to be offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of paragraph (b) of Rule 17.
NOTES
[1] The statute reads as follows:

a. In prosecutions for aggravated sexual assault, sexual assault, aggravated criminal sexual contact, criminal sexual contact, or child abuse, or in any action alleging an abused or neglected child under P.L. 1974, c. 119 (C. 9:6-8.21 et seq.), the court may, on motion and after conducting a hearing in camera, order the taking of the testimony of a witness on closed circuit television at the trial, out of the view of the jury, defendant, or spectators upon making findings as provided in subsection b. of this section.
b. An order under this section may be made only if the court finds that the witness is 16 years of age or younger and that there is a substantial likelihood that the witness would suffer severe emotional or mental distress if required to testify in open court. The order shall be specific as to whether the witness will testify outside the presence of spectators, the defendant, the jury, or all of them and shall be based on specific findings relating to the impact of the presence of each.
c. A motion seeking closed circuit testimony under subsection a. of this section may be filed by:
(1) The victim or witness or the victim's or witness's attorney, parent or legal guardian;
(2) The prosecutor;
(3) The defendant or the defendant's counsel; or
(4) The trial judge on the judge's own motion.
d. The defendant's counsel shall be present at the taking of testimony in camera. If the defendant is not present, he and his attorney shall be able to confer privately with each other during the testimony by a separate audio system.
e. If testimony is taken on closed circuit television pursuant to the provisions of this act, a stenographic recording of that testimony shall also be required. A typewritten transcript of that testimony shall be included in the record on appeal. The closed circuit testimony itself shall not constitute part of the record on appeal except on motion for good cause shown.
[2] Because the trial court gave no limiting instruction, the jury was permitted to consider the victim's hearsay statements as proof of the defendant's participation in unlawful sexual acts.
[3] For a discussion of the problems in child sex abuse prosecutions, see generally McGrath & Clemens, The Child Victim as a Witness in Sexual Abuse Cases, 46 Mont.L.Rev. 229 (1985); Ringland, Child Sex Abuse Evidence Problems, 12 U.Dayton L.Rev. 27 (1986); Skoler, New Hearsay Exceptions for a Child's Statement of Sexual Abuse, 18 J. Marshall L.Rev. 1 (1984) (Skoler); Note, A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases, 83 Colum.L.Rev. 1745 (1983) (Note, Comprehensive Approach); Note, The Young Victim as Witness for the Prosecution: Another Form of Abuse?, 89 Dick L.Rev. 721 (1985); Note, The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations, 98 Harv.L.Rev. 806 (1985) (Note, Two Legislative Innovations); Note, The Sexually Abused Infant Hearsay Exception: A Constitutional Analysis, 8 J.Juv.L. 59 (1984); Note, A Tender Years Doctrine for the Juvenile Courts: An Effective Way to Protect the Sexually Abused Child, 61 J.Urb.L. 249 (1984); Note, State v. Smith: Facilitating the Admissibility of Hearsay Statements in Child Sexual Abuse Cases, 64 N.C.L.Rev. 1352 (1986); Note, Child Witnesses in Sexual Abuse Criminal Proceedings: Their Capabilities, Special Problems, and Proposals for Reform, 13 Pepperdine L.Rev. 157 (1985); Note, State v. McCafferty: The Conflict Between a Defendant's Right to Confrontation and the Need for Children's Hearsay Statements in Sexual Abuse Cases, 30 S.D.L.Rev. 663 (1985); Note, Confronting Child Victims of Sex Abuse: The Unconstitutionality of the Sexual Abuse Hearsay Exception, 7 U.Puget Sound L.Rev. 387 (1984); Note, Sexual Abuse of Children  Washington's New Hearsay Exception, 58 Wash.L.Rev. 813 (1983); Note, Can You Hear What I Hear? Direction and Limitation on Allowable Hearsay Testimony in Child Sexual Abuse Cases: State v. Campbell, 22 Williamette L.Rev. 421 (1986); Note, Minnesota's Hearsay Exception for Child Victims of Sexual Abuse, 11 Wm. Mitchell L.Rev. 799 (1985) (Note, Minnesota's Exception).
[4] We note that the legislature has already provided for the admissibility of a child's out-of-court statement alleging abuse or neglect in child abuse proceedings in the Family Court. N.J.S.A. 9:6-8.46(a)(4).
[5] The United States Supreme Court has agreed to review a defendant's conviction under the sixth and fourteenth amendments where in his trial for sexually molesting two thirteen-year-old girls the victims testified behind a one-way screen so that they could not see the defendant. State v. Coy, 397 N.W.2d 730 (Iowa 1986), prob. juris. noted sub nom. Coy v. Iowa, ___ U.S. ___, 107 S.Ct. 3260, 97 L.Ed.2d 760 (1987).
[6] The full text of ABA Recommendation 4.3 reads as follows:

A child victim's out-of-court statement of sexual abuse should be admissible into evidence where it does not qualify under an existing hearsay exception, as long as: (1) the child testifies; or (2) in the event the child does not testify, there is other corroborative evidence of the abuse. Before admitting such a statement into evidence, the judge should determine whether the general purposes of the evidence rules and interests of justice will best be served by admission of the statement into evidence. In addition, the court should consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, the reliability of the assertion, and the reliability of the child witness in deciding whether to admit such a statement.
A statement may only be admitted under this exception if the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it.
[7] The sixth amendment in relevant part states that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." See State v. Bankston, 63 N.J. 263, 268-69 (1973).
[8] The text of Evid.R. 17 reads:

A person is disqualified to be a witness if the judge finds that (a) the proposed witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth. An interpreter is subject to all the provisions of these rules relating to witnesses.
A child's age in itself cannot render him incompetent as a witness. State in Interest of R.R., 79 N.J. 97, 113 (1979) (sustaining trial court ruling allowing four-year-old victim to testify, but reversing conviction because victim's mother acted as interpreter). Nor can age alone constitute a sufficient ground for ordering a psychiatric examination of the proposed witness in ruling on competency to testify. State v. R.W., supra, 104 N.J. at 19-27.
[9] See N.Y. Times, Nov. 14, 1987, § 1 at 1 (noting that "sexual abuse charges are arising [increasingly] as an issue in divorce, custody, or visitation battles," and collecting examples).
[10] We do not consider in this opinion the recognition of any other rights that may be asserted by a defendant in a sexual abuse prosecution relating to a child victim's out-of-court statements.
[11] "The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts. * * *" N.J. Const. of 1947 art. VI, § 2, ¶ 3.
[12] Federal Evidence Rule 803(24) reads as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * * * * *
A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.
The text of Federal Evidence Rule 804(b)(5) is identical, but applies where the declarant is unavailable.
[13] Federal Evidence Rule 102 is the counterpart to New Jersey Evidence Rule 5.
[14] The foregoing analysis by Judge Biunno of the intended scope of Rule 5 first appeared in the October 30, 1968 edition of the New Jersey Rules of Evidence at vii & viii (Gann 1968). An earlier version of Judge Biunno's commentary reflects a somewhat more expansive view of Rule 5:

RELATION OF THE RULES TO DECISIONAL LAW.
The development of evidence law through the decisional process on a case-by-case basis is not affected by the present rules. See Rule 5.
At least insofar as court-adopted rules are concerned, the present set of rules is intended to have an effect roughly equivalent to a line of cases that can ordinarily be expected to be followed, but which do not stand in the way of a change in the law on a decisional basis as overriding considerations may require.
The legislatively enacted rules are expected to be given greater force, especially since these deal with matters of strong public policy considered important enough to reject the evidence otherwise admissible. These can be expected to be dealt with primarily in terms of interpretation, construction and application.
But even though the court-adopted rules will not have quite the effect of statutes, the flexible mechanism by which they can be altered provides the practical means for revising and restating a rule when its tenor and content have been affected by the development of decisional law. In this way induction of a rule by the common law developmental process can be expressed by a revised or amended rule under relatively simple procedures. [Biunno, Preface to Schnitzer & Wildstein, New Jersey Rules Service, Special Release # 3, New Jersey Rules of Evidence v (1967).]