625 A.2d 1147

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. DENNIS
PATRICK DONEGAN, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 6, 1993—Decided May 17, 1993.

Before Judges ANTELL, SKILLMAN and VILLANUEVA.

*Jacobs, Bruso & Barbone,* attorneys for appellant (*Peter L. Bruso,* on the brief).

*Jeffrey S. Blitz,* Atlantic County Prosecutor, attorney for respondent (*Jack J. Lipari,* Assistant County Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

ANTELL, P.J.A.D.

After a trial before a Superior Court judge sitting without a jury, defendant was convicted of sexual assault, *N.J.S.A.* 2C:14–2b, endangering the welfare of a child, *N.J.S.A.* 2C:24–4, and child abuse, *N.J.S.A.* 9:6–3. The victim of these crimes was L.M., the six year old daughter of B.M. Defendant was acquitted in the same trial of committing identical offenses upon J.M., L.M.'s four-year old sister. At the time of the criminal events alleged, between June 1, 1990, and September 14, 1990, B.M. and defendant were engaged to be married and were living together, with B.M.'s daughters, in defendant's home.

On appeal, defendant challenges the admission of a videotape recording of a police interview with L.M., and also the court's ruling limiting his cross-examination of B.M. The material facts follow.

On September 14, 1990, the children's Aunt Joan [1] unexpectedly came upon defendant and J.M. sitting together on a sofa. The aunt saw J.M. move away from defendant while wiping her mouth. She also heard the child exclaim "Yuck." J.M. later told the aunt that defendant had put his tongue in her mouth. Upon further questioning the aunt learned that defendant had been engaging in sexual relations with both of the girls. The police were notified and on the morning of September 17, 1990, B.M. and the aunt

---

[1] A fictitious name.

brought the girls to the prosecutor's office. After a preliminary interview, Lieutenant Kauffman referred them to their pediatrician who, after an examination, reported irritation to the vaginas of both children. In L.M.'s case he also reported a slackish tear of the labia majora. The group then returned to the prosecutor's office where, later that day, the videotaped interview was held.

Before the trial began, the State moved, pursuant to *Evid.R.* 63(33), for the admission of various out-of-court statements, including the September 17, 1990, interview. After a hearing pursuant to *Evid.R.* 8, the State's motion was granted. The court concluded that

> Considering the totality of the circumstances, on the basis of the time, content and circumstances of the statement, there is a probability of trustworthiness of the video of 9-17 in which L.M. relates what happened to her.

In reaching that conclusion the court took into account the fact that L.M. would be testifying at trial and would therefore be subject to cross-examination, that the interviewing room and atmosphere were not coercive and that the questions were neutral; that Lieutenant Kauffman, who conducted the interview, displayed no partisanship, and that L.M.'s statement was vivid and detailed in a way that one would not normally expect from a young child unless she was recounting something she had personally experienced. The court also noted that L.M.'s prior discussions with other people did not affect the spontaneity of her videotaped statement and that L.M. had not been coerced into saying what she did.

Insofar as relevant, *Evid.R.* 63(33) provides:

> A statement by a child under the age of 12 relating to a sexual offense under the Code of Criminal Justice committed on, with, or against that child is admissible in a criminal proceeding brought against a defendant for the commission of such offense if (a) the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement at such time as to provide him with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to Rule 8(1), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and (c) either (i) the child testified at the proceeding....

The Rule was adopted in response to the observation of the Supreme Court in *State v. D.R.*, 109 *N.J.* 348, 359, 537 *A.*2d 667

(1988), that "a child victim's spontaneous out-of-court account of an act of sexual abuse may be highly credible because of its content and the surrounding circumstances." In comparison, the court noted,

the reliability of in-court testimony of a young child victimized by a sexual assault is often affected by the stress of the courtroom experience, the presence of the defendant, and the prosecutor's need to resort to leading questions. Note, *Comprehensive Approach, [to Child Hearsay Statements in Sex Abuse Cases]*, 83 *Colum.L.Rev.* at 1751–52; Skoler [*New Hearsay Exceptions for a Child's Statement of Sexual Abuse, supra*, 18 *J. Marshal L.Rev.* at 6. The lapse of time between the sexual assault and the trial can affect the child's ability to recall the incident. In cases where the accused is a member of the child's family or household, the victim may be urged or coerced to recant. In general, the courtroom setting is intimidating to children and often affects adversely their ability to testify credibly.

[*Id.* at 360, 537 *A.*2d 667.]

*See also, State v. C.H.*, 264 *N.J.Super.* 112, at 123–24, 624 *A.*2d 53, at 58–60 (App.Div.1993).

*Evid.R.* 63(33) makes available for the fact-finder the child's perception of the sexual maltreatment that is the subject of the case when that event is fresh in the child's mind and when the child is free of extrinsic distractions. Defendant argues, however, that the evidence in this case does not provide the "particularized guarantees of trustworthiness" required by the Supreme Court of the United States in *Idaho v. Wright*, 497 *U.S.* 805, 815–16, 110 *S.Ct.* 3139, 3147, 111 *L.Ed.*2d 638, 652 (1990). That case involved the prosecution of a mother for lewd conduct with her two minor daughters who were five and a half and two and a half years old at the time of the alleged crimes. The case came before the Supreme Court of the United States on appeal by the State of Idaho from a reversal of the conviction by the Supreme Court of Idaho. The reversal was based on a finding of error in the admission of testimony by a pediatrician as to what the younger daughter had told him shortly after the acts of sexual abuse were discovered. The statement had been admitted under Idaho's residual hearsay exception rule, which permitted such evidence where "circumstantial guarantees of trustworthiness" equivalent to those of traditional firmly rooted hearsay exceptions are present. The Supreme

Court of the United States affirmed the Supreme Court of Idaho, finding that the Confrontation Clause of the Federal Constitution barred the admission of the younger daughter's hearsay statements.

The Supreme Court of Idaho found that the pediatrician's testimony did not meet prescribed standards because the questions and answers were not recorded on videotape for preservation, because he asked "blatantly leading questions" and because he questioned the child with a preconceived idea of what she should be disclosing. *Id.*, 497 *U.S.* at 818, 110 *S.Ct.* at 3148, 111 *L.Ed.*2d at 654. In seeking the particularized guarantees of trustworthiness, the Supreme Court of the United States declined to endorse any "mechanical test." Instead, it determined that these must be drawn from "the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 818, 110 *S.Ct.* at 3148, 111 *L.Ed.*2d at 655–656. The conclusion reached was that in order to qualify, the proposed evidence must be at least as reliable as evidence "admitted under a 'firmly rooted' hearsay exception . . . so . . . . that adversarial testing would add little to its reliability." *Id.* at 821, 110 *S.Ct.* at 3149, 111 *L.Ed.*2d at 656.

Illustrative of the factors the Court commended for consideration in deciding the admissibility of hearsay statements made by a child witness in child sex abuse cases are (1) spontaneity and consistent repetition, (2) the mental state of the declarant, (3) the use of terminology unexpected of a child of similar age and (4) the absence or presence of a motive to fabricate. *Ibid.* Having in mind the suggestive manner in which the pediatrician conducted his interview with the young daughter and "the presumptive unreliability of the out-of-court statements," the Supreme Court found "no special reason for supposing that the incriminating statements were particularly trustworthy." *Id.* at 826, 110 *S.Ct.* at 3152, 111 *L.Ed.*2d at 659.

■ To support his contention that the videotaped interview with L.M. should not have been admitted, defendant argues that

the evidence suggests a lack of spontaneity and the existence of prior coaching. He points out that on September 17, 1990, the child was interviewed four times, twice in the morning and twice in the afternoon. He observes that in the morning, L.M. said only that defendant put his tongue in her mouth, and in the afternoon, after going with her aunt to the doctor, she stated during the videotaped interview that defendant rubbed his penis on her vagina and got "sticky stuff" on her stomach. Defendant further notes that although Lieutenant Kauffman knew that the aunt had questioned the girls, he never told her to discontinue doing so. Nor did he ask L.M. or the aunt what they talked about when they went to the doctor. Thus, defendant argues, the spontaneity of L.M.'s statements were adversely affected.

Defendant also points out that the aunt instructed J.M., the younger child, to "tell the truth," while J.M. was being interviewed, thus demonstrating that the aunt was inclined to pressure the girls and affect their statements. Defendant contends that the failure of L.M. to testify at the Rule 8 hearing also should have weighed against admitting her taped interview, since her testimony would have shed light on the circumstances under which the taped statement was given. He argues, too, that L.M. should have been asked during the videotaped interview why she did not describe during her initial interviews defendant's conduct that she later discussed during the videotaped interview.

As the Supreme Court said in *Idaho v. Wright,* "... it is possible that '[i]f there is evidence of prior interrogation, prompting, or manipulation by adults, spontaneity may be an inaccurate indicator of trustworthiness.'" *Id.,* 497 *U.S.* at 827, 110 *S.Ct.* at 3152, 111 *L.Ed.*2d at 659–60, quoting from *State v. Robinson,* 153 *Ariz.* 191, 201, 735 *P.*2d 801, 811 (1987).

The case before us is significantly different from *Idaho v. Wright, supra,* and other cases called to our attention. Here, the child's out-of-court statement did not come to the court through the eyes and ears of another person, but by a videotaped recording that conveyed not only the exact words spoken by the child,

but their finer shades of meaning through facial expressions, body movements and inflections of voice. Although there were occasions during the interview when cross-examination might have been appropriate, such opportunities were preserved by the fact that the child herself testified during the trial on direct and cross-examination. This provided the court a uniquely valuable opportunity, by taking into account both her taped interview and her in-court testimony, to evaluate credibility factors, such as demeanor and consistency. This was recognized by the Supreme Court when it wrote in *Idaho v. Wright* that where the circumstances of taking the out-of-court statement are such that the child would be "particularly unlikely to be telling the truth ... cross-examination at trial would be highly useful to probe the declarant's state of mind when he made the statements." *Id.*, 497 *U.S.* at 822, 110 *S.Ct.* at 3150, 111 *L.Ed.*2d at 657. In *Idaho v. Wright*, it is noted, the child declarant was not available to testify as a witness at the trial.

In our view, moreover, the concerns expressed in *Idaho v. Wright, supra,* probably did not contemplate cases where the child's statement was recorded on videotape. Indeed, one of the stated reasons why the Supreme Court of Idaho determined that the child's out-of-court statement to the pediatrician was inadmissible, was the fact that it was not videotaped when it might have been. *Id.*, 497 *U.S.* at 812, 110 *S.Ct.* at 3144, 111 *L.Ed.*2d at 650. The Supreme Court of the United States seems to have excluded this as a reason for its decision, when it stated that it does "not believe the Constitution imposes a fixed set of procedural prerequisites to the admission of such statements at trial," *id.* at 818, 110 *S.Ct.* at 3148, 111 *L.Ed.*2d at 654, suggesting, it seems to us, that videotaping the child's out-of-court statement, as was done here, goes beyond the necessities of the Confrontation Clause, at least where the child actually testifies during the trial. Therefore, the procedures followed in this case to assure "particular guarantees of trustworthiness" exceed what the Supreme Court of the United States stated would suffice in *Idaho v. Wright.*

It is evident to us that the trial judge, who decided this case without a jury, carefully considered the constitutionally prescribed factors relevant to the trustworthiness of the videotape. Having taken the opportunity ourselves to observe and listen to the videotaped interview, we share the judge's view that it was basically unrehearsed, that the child spoke in the language of childhood about events of which she could have known only through direct experience, and that her demeanor was at all times at least consistent with the thesis of believability. Whatever questions of credibility that arose during the interview could have been explored on cross-examination of L.M. at the trial. At no time did the interviewer or the surrounding environment suggest to the child what answers she should be providing; nor in any other way did the interviewer evidence any sign of partisanship. The trial court concluded that the videotaped statement was, in the words of *Evid.R.* 63(33), "probably trustworthy," and we perceive no sound reason to disturb that finding. *State v. Johnson*, 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964).

On July 11, 1990, defendant underwent abdominal surgery for a hernia. According to defendant, because of the surgery any attempt at sexual activity induced excruciating pain so that he would have been unable to perform the acts charged to him under the indictment. In rebuttal, B.M. testified that she resumed having sexual intercourse with defendant about twelve days after the surgery, and that defendant wanted to have sex only five days after the surgery, but that she refused out of concern that it would cause him pain. On cross-examination, defense counsel asked B.M. whether her menstrual cycle was the same then as it was during the summer of 1990. Counsel contended that the relevancy of this question lay in the fact that B.M. and defendant customarily abstained from sexual relations when B.M. was menstruating and if, in fact, B.M. was experiencing her period when she claims to have been having sexual intercourse with defendant, that fact would undermine the credibility of her testimony. The State's objection to the question was sustained and the issue did not again arise.

Defendant claims that the limit placed by the court on his cross-examination of B.M. was reversible error. While the court, in its discretion, might well have allowed defendant to pursue the question, we conclude that the ruling was harmless. As we have noted, the case was decided by a judge sitting without a jury. In view of the fact that the question was precluded because of perceived irrelevancy, it seems hardly possible that, if it had been permitted, the information gathered would have carried significant weight in the judge's ultimate resolution of the issue.

Affirmed.