This reasoning is no less applicable in this case.

Finally, we reject defendant's and *amicus'* argument that the order to require mediation and possibly public interest arbitration usurps the veto power bestowed on the Governor of New Jersey. *N.J.S.A.* 32:3-4. However, the Compact specifically recognizes that the legislatures of both states may delegate or impose additional powers on the DRPA. *N.J.S.A.* 32:3-5. Furthermore, the Governor's veto power is a check on the actions of the DRPA rather than an affirmative grant to thwart public policy.

Accordingly, we affirm the order requiring the DRPA to mediate and, if necessary, submit to public interest arbitration its contract dispute with Lodge 30.

Affirmed.

733 A.2d 554

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. CHARLES G. HACKETT, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 6, 1999—Decided July 26, 1999.

Steinberg, J., concurred in part and dissented in part and filed opinion.

———

462

464

Before Judges PRESSLER, KLEINER, and STEINBERG.

*Michael N. Huff* argued the cause for appellant.

*Stephen D. Moore*, Cape May County Prosecutor, attorney for respondent (*Robert W. Johnson*, Assistant Prosecutor, of counsel and on the brief).[1]

*Catherine A. Foddai*, Deputy Attorney General, on behalf of respondent, argued the cause for *amicus curiae*, Attorney General of New Jersey (*Peter Verniero*, Attorney General, attorney; *Ms. Foddai*, on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

Tried to a jury, defendant Charles G. Hackett was convicted of fourth-degree lewdness, *N.J.S.A.* 2C:14–4b(1) (count one), and third-degree endangering the welfare of children, *N.J.S.A.* 2C:24–

---

[1] At oral argument, Mr. Johnson did not appear. Instead, Ms. Foddai presented the argument for respondent on behalf of *amicus curiae*, Attorney General of New Jersey.

4a (count two).  The victims were three girls: two, M.M. and A.S., both age eleven; and M.R.K., age thirteen.  The girls observed defendant standing nude in his home located near a school bus stop where the victims waited each morning for the public school bus.  The bus stop was actually in front of M.R.K.'s home.

Following defendant's conviction, he was sentenced to a custodial term of four years on count two and to a concurrent term of eighteen months on count one.  Appropriate statutory penalties were imposed.

On appeal, defendant raises four points of error:

POINT I

INSUFFICIENT EVIDENCE WAS SUBMITTED TO SUSTAIN A CONVICTION FOR ENDANGERING WELFARE OF CHILDREN, *N.J.S.A.* 2C:24-4(a).

POINT II

THE TRIAL COURT ERRED BY PERMITTING USE OF PRIOR BAD ACT EVIDENCE BY THE STATE.

POINT III

THE TRIAL COURT ERRED IN PROVIDING AN INSUFFICIENT PRIOR BAD ACT JURY INSTRUCTION.

POINT IV

[DEFENDANT'S TRIAL COUNSEL] PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL TO DEFENDANT CHARLES HACKETT.[2]

When defendant's appeal was first scheduled for appellate disposition, we requested counsel to provide supplemental briefs addressing "[w]hether an actor's conduct that is completely encompassed by the fourth-degree crime as defined in *N.J.S.A.* 2C:14-4b(1) (lewdness observed by a child less than 13 years of age) may also be prosecuted as a third-degree crime as defined by *N.J.S.A.* 2C:24-4 (endangering the welfare of children) in the absence of any elements not already encompassed by *N.J.S.A.* 2C:14-4b(1)."  We also invited the Attorney General to file an *amicus curiae* brief addressing our specific inquiry.  We conclude that, based on statutory construction, *N.J.S.A.* 2C:14-4b(1) and *N.J.S.A.* 2C:24-4a proscribe independent criminal conduct and the

---

2 Defendant's appellate counsel was substituted for defendant's trial counsel.

defendant may be charged under the same indictment with a violation of each statute. However, the State presented insufficient evidence to convict defendant of violating *N.J.S.A.* 2C:24–4a.[3]

Accordingly, we reverse defendant's conviction on count two for endangering the welfare of children. We additionally conclude that under the facts presented, even if defendant's convictions had been proper under both counts, the conviction for lewdness, *N.J.S.A.* 2C:14–4b(1), should have merged with the conviction for endangering the welfare of children, *N.J.S.A.* 2C:24–4a. Lastly, we conclude that defendant's contentions in Points II, III, and IV are without merit. *R.* 2:11–3(e)2.

I

On October 2, 1996, M.M. observed defendant standing nude inside his home approximately five feet from his front window. According to M.M., she was able to observe the entire front of defendant's body. She also thought that defendant had waved to her. M.M. testified that she had also observed defendant standing nude near the same window on or about September 4, 1996. M.M. testified that during the earlier incident, defendant was talking on the telephone. At trial, M.M. testified that she had observed defendant standing nude on approximately ten occasions. After her observation on October 2, 1996, M.M. informed A.S.'s mother, T.W. M.M. also testified that prior to the date when defendant moved to his residence, she had visited the former residents of that same home and was familiar with the floor plan. According to M.M., the front window in defendant's home was in the family room which adjoins an interior room used as a dining room and when she observed defendant he was standing in the dining room.

M.R.K. testified that she had observed defendant standing nude and talking on a telephone on October 2, 1996. She indicated that

---

[3] Even if the State presented sufficient evidence to convict, the jury instruction was flawed and was insufficient to fully explain the statutory conduct proscribed under *N.J.S.A.* 2C:24–4a.

the telephone was approximately three to four feet from the front window. M.R.K. also testified that she had observed defendant naked on other days prior to October 2, 1996. Additionally, on one occasion, she confronted defendant and informed him, "I have been seeing somebody standing nude in your house, and I am getting sick of it because my friends are too young to see this." M.R.K. indicated that following that confrontation she never again saw defendant standing nude in his home.

A.S. testified that she only saw defendant standing naked on one occasion—October 2, 1996. She indicated that on that date defendant's back was facing her and defendant was talking on a telephone a few feet from the window.

T.W. testified that A.S. had informed her of the episode on October 2, 1996. T.W. indicated that in September and October 1996 there were no curtains on defendant's front window, but after M.R.K. confronted defendant, blinds were closed on defendant's front window.

After T.W. reported the October 2, 1996, incident to the Middle Township Police Department, Detective Loefflad interviewed each girl and then interviewed defendant. According to Loefflad, defendant indicated "he may have answered the phone without any clothes on"; he did not know why he had been confronted by M.R.K., but he told her "he would look into it and take care of it." Defendant denied any wrongdoing and indicated that his curtains would be closed in the future.

## II

Prior to defendant's trial, the State informed defendant that it intended to introduce evidence at defendant's trial of two prior convictions of defendant: a 1977 lewdness conviction in Pennsylvania and a conviction following a guilty plea on January 4, 1996, for lewdness as a disorderly person, *N.J.S.A.* 2C:14–4a, occurring on September 10, 1995, in North Wildwood, New Jersey. On June 13, 1995, Judge Carmen Alvarez ruled that defendant's 1977 conviction was too remote, but the State would be permitted to

introduce at trial evidence of defendant's 1996 conviction pursuant to *N.J.R.E.* 404(b).[4]

Based on the pre-trial ruling, the State produced two witnesses, Officers McNulty and Porch, both members of the North Wildwood police. McNulty testified he and Officer Porch responded to an anonymous telephone call reporting that a man was masturbating under the North Wildwood boardwalk. The two officers approached the boardwalk area from different directions. Each officer indicated that defendant was masturbating and Officer Porch testified that defendant's genitals were in full view.

At defendant's trial, he presented only two witnesses: his wife and a private detective, James G. Brennenstuhl. Defendant did not testify.

Defendant's wife testified that defendant and their two children moved to their residence on September 19, 1996. She indicated her normal schedule involved: waking at 6:00 a.m., driving her children to school at approximately 7:00 a.m., and returning to the residence at about 7:30 a.m. She also testified that the only telephone in the residence was located in the kitchen.

Detective Brennenstuhl authenticated a series of photographs taken by him at defendant's residence between 6:48 and 7:20 a.m. which included defendant standing either in the living room or the dining room. He also testified that the distance from the street to defendant's home is approximately fifty to sixty feet.

### III

■ We first address defendant's first point of error. Defendant argues in Point I of his brief that his conviction should be reversed because endangering the welfare of children as a third-degree offense "is targeted at defendants who have assumed a role in a child's life but one that does not rise to the level of parent or

---

4 Another judge presided at defendant's trial, at post-trial motion proceedings, and at sentencing.

guardian." The argument is misplaced. The statute states that when a person who is either the parent or who stands *in loco parentis* violates the endangering statute, it is a second-degree offense. Defendant completely overlooks the import of the second sentence in *N.J.S.A.* 2C:24–4a providing, "*Any other person who engages in conduct or who causes harm as described in this subsection to a child under the age of 16 is guilty of a crime of the third degree.*" (emphasis added). However, the point of error raised permits our discussion of the question we posed *sua sponte:* whether a defendant may be prosecuted under both *N.J.S.A.* 2C:14–4b(1), lewdness as a crime of the fourth degree, and *N.J.S.A.* 2C:24–4a, endangering the welfare of children as a crime of the third degree.

As originally enacted as part of the Criminal Code, *N.J.S.A.* 2C:14–4 classified all acts of lewdness as disorderly persons offenses. The statute then provided that

A person commits a disorderly persons offense if he does any flagrantly lewd and offensive act which he knows or reasonably expects is likely to be observed by other nonconsenting persons who would be affronted or alarmed. "Lewd acts" shall include the exposing of the genitals for the purpose of arousing or gratifying the sexual desire of the actor or of any other person.

*N.J.S.A.* 2C:14–4 was amended by *L.* 1992, c. 8, § 1, by designating certain acts of lewdness not as disorderly persons offenses but as fourth-degree crimes. Thus, paragraph b(1) of the 1992 version provides as follows:

b. A person commits a crime of the fourth degree if:

(1) He exposes his intimate parts for the purpose of arousing or gratifying the sexual desire of the actor or any other person under circumstances where the actor knows or reasonably expects he is likely to be observed by a child who is less than 13 years of age where the actor is at least four years older than the child.

Paragraph (b)(2) is an analogous provision addressed to a likely observer "who because of mental disease or defect is unable to understand the sexual nature of the actor's conduct." The purpose of the 1992 amendment of the lewdness statute, as explained in the Senate Judiciary Committee Statement to Assembly Bill No. 850, was "to upgrade acts of lewdness committed in the

presence of a child less than 13 of age . . ." or in the presence of a mentally disabled person.

The separate crime of endangering the welfare of children is proscribed by *N.J.S.A.* 2C:24–4, which provides, in pertinent part:

a. Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child as defined in *R.S.* 9:6–1, *R.S.* 9:6–3 and *P.L.* 1974, c. 119, § 1 (*C.* 9:6–8.21) is guilty of a crime of the second degree. *Any other person who engages in conduct or who causes harm as described in this subsection to a child under the age of 16 is guilty of a crime of the third degree.*

[emphasis added.]

*N.J.S.A.* 2C:24–4b(2), (3), (4), (5) and (6) are clearly proscriptions against child pornography.

We initially note that *N.J.S.A.* 2C:24–4a proscribes engaging in "sexual conduct" or, for one who does not stand *in loco parentis,* "conduct;" however, the statute does not define the proscribed "sexual conduct" or "conduct." *N.J.S.A.* 2C:24–4a specifically proscribes engaging in sexual conduct that would impair or debauch the morals of the child. The question before us is whether defendant's nudity is encompassed by the term "sexual conduct" or "conduct." The annotations in Cannel, *New Jersey Criminal Code Annotated,* comment 2 on *N.J.S.A.* 2C:24–4 (1998), note that "[t]he term sexual conduct is not defined. Clearly included are sexual assaults and sexual contacts as those terms are used in Chapter 14. . . . The term seems not necessarily limited, however, to such conduct. Neither participation nor observation by the child is explicitly required."

In *State v. White,* 105 *N.J.Super.* 234, 251 *A.2d* 766 (App.Div.), *certif. denied,* 54 *N.J.* 242, 254 *A.2d* 789 (1969), defendant was convicted of "impairing the morals of a child in violation of *N.J.S.A.* 2A:96–3," the predecessor statute to *N.J.S.A.* 2C:24–4. Defendant showed "photographs of nude men and women in various postures" to two minor children. *Id.* at 236, 251 *A.2d* 766. We affirmed the conviction, noting that "the actions of defendant and the methods employed by him to induce the minor girls to

become exposed to them had the potential effect of debauching the children or impairing their morals, within the meaning and contemplation of the statute under which defendant was indicted, tried, and convicted." *Id.* at 237, 251 *A.*2d 766. Thus, "sexual conduct" includes showing nude explicit photographs to children. We consider defendant's nudity in the instant matter, in light of the holding in *White*, as conduct that falls within the meaning of "sexual conduct" or "conduct" proscribed by *N.J.S.A.* 2C:24–4.

### A.

Prosecution for violations of *N.J.S.A.* 2C:24–4a, endangering the welfare of a child, as reported in published opinions, generally appears in conjunction with prosecution for other sexual conduct. Most illustrative is *State v. Zeidell,* 154 *N.J.* 417, 713 *A.*2d 401 (1998), where defendant was convicted of sexual assault, *N.J.S.A.* 2C:14–2b, endangering the welfare of a child, *N.J.S.A.* 2C:24–4a, and fourth-degree lewdness, *N.J.S.A.* 2C:14–4b(1). Defendant was observed masturbating while standing on a boardwalk in plain view of two children and an adult who were on the beach approximately seventy-five feet from the boardwalk. In a reported decision, 299 *N.J.Super.* 613, 691 *A.*2d 866 (App.Div.1997), a majority of this court reversed defendant's convictions concluding that, because the State had failed to establish specific victimization and aggressive assaultive conduct, it had not proved the necessary relational component for sexual assault. *Id.* at 619–20, 691 *A.*2d 866. Our dissenting colleague concluded that no specific victimization was required and that all of the statutory elements of *N.J.S.A.* 2C:14–2b had been established. *Id.* at 624–27, 691 *A.*2d 866. The Supreme Court reversed our decision and reinstated defendant's conviction stating in part:

> When the controlling statutory provisions of the Code are read together, we find that a tender-years-sexual assault under *N.J.S.A.* 2C:14–2b contains three key elements. They are: (1) a victim who is less than thirteen years old, (2) a defendant-actor who is at least four years older than the victim, and (3) a sexual contact with a victim under the critical age. The sexual contact with a victim involves an intentional or purposeful touching of an intimate part. There are three types of intentional sexual touching: the actor may touch himself or herself, the

actor may touch the victim, or the victim may touch the actor. Each such intentional touching must be for at least one of four purposes: either degrading or humiliating the victim, or sexually arousing or sexually gratifying the defendant-actor. Finally, if the touching is by the actor himself or herself, the sexual touching must be in view of the victim whom the actor knows to be present.

[*Zeidell, supra,* 154 *N.J.* at 428, 713 *A.*2d 401.]

The Court also discussed *N.J.S.A.* 2C:14–4 proscribing lewdness. It noted:

[U]nder the Code, lewdness can be either a disorderly persons offense or a fourth-degree crime. It is a disorderly persons offense whenever the actor engages in any flagrantly lewd and offensive act, including exposing the actors's own genitals regardless of whether done for the actors's sexual arousal or gratification, which the actor knows or reasonably expects is likely to be observed by other non-consenting persons over the age of thirteen years who would be affronted or alarmed by the conduct. *N.J.S.A.* 2C:14–4a.

Whether such exposure becomes fourth-degree lewdness depends on the identity of the victim. Fourth-degree lewdness under subsection "b(1)" occurs when the victim is under thirteen and the actor is at least four years older than the victim. *N.J.S.A.* 2C:14–4b(1). When the victim suffers from a mental disease or defect that makes the victim unable to understand the sexual nature of the actor's conduct, an exposure is fourth-degree lewdness under subsection "b(2)." *N.J.S.A.* 2C:14–4b(2).

[*Id.* at 430, 713 *A.*2d 401.]

*Zeidell* did not discuss defendant's conviction on two counts of endangering the welfare of a child, *N.J.S.A.* 2C:24–4a, other than to note that the trial judge at sentencing had merged defendant's endangering convictions into defendant's tender-years-sexual assault convictions under *N.J.S.A.* 2C:14–2b. *Id.* at 419, 713 *A.*2d 401.

Other reported decisions involving endangering the welfare of a child, *N.J.S.A.* 2C:24–4, include[5] *State v. D.R.,* 109 *N.J.* 348, 537 *A.*2d 667 (1988) (defendant convicted of aggravated sexual assault, *N.J.S.A.* 2C:14–2a, sexual assault, *N.J.S.A.* 2C:14–2b, and endangering the welfare of a child, *N.J.S.A.* 2C:24–4a); *State v. Miller,* 108 *N.J.* 112, 527 *A.*2d 1362 (1987) (defendant charged with aggravated sexual assault, *N.J.S.A.* 2C:14–2a(1), and endangering,

---

[5] This enumeration is not intended to be exhaustive but is intended to illustrate the correlation between decisions discussing a conviction for endangering the welfare of a child, *N.J.S.A.* 2C:24–4, and other crimes proscribed by the Code.

*N.J.S.A.* 2C:24–4a); [6] *State v. Still,* 257 *N.J.Super.* 255, 608 *A.*2d 404 (App.Div.1992) (defendant convicted of sexual assault, *N.J.S.A.* 2C:14–2b, and endangering the welfare of a child, *N.J.S.A.* 2C:24– 4a); and *State v. Davis,* 229 *N.J.Super.* 66, 550 *A.*2d 1241 (App. Div.1988) (defendant convicted of two counts of sexual assault, *N.J.S.A.* 2C:14–2b, and two counts of endangering the welfare of a child, *N.J.S.A.* 2C:24–4).

The significance of *Zeidell, supra,* 154 *N.J.* 417, 713 *A.*2d 401, is the Court's discussion of the interrelationship between the sexual assault statute, *N.J.S.A.* 2C:14–2b, and the lewdness statute, *N.J.S.A.* 2C:14–4b(1). *Id.* at 421, 423–34, 713 *A.*2d 401.

We perceive that the issues posed by defendant's appeal may also be analyzed in a similar framework to that utilized in *Zeidell,* but instead comparing the relationship between the lewdness statute, *N.J.S.A.* 2C:14–4b(1), and the endangering statute, *N.J.S.A.* 2C:24–4a. We acknowledge that nudity itself in the privacy of one's home is not proscribed behavior under New Jersey law. However, nudity becomes a statutory offense when another person is subjected to the nudity. Nudity, if for the purpose of arousing or gratifying the actor's sexual desire, is a disorderly persons offense if the actor knows or reasonably expects he is likely to be observed by a nonconsenting person who would be affronted or alarmed, *N.J.S.A.* 2C:14–4(a). The same episode of nudity—for the purpose of arousing or gratifying the actor's sexual desire—is a fourth-degree offense if observed or where the actor reasonably expects he is likely to be observed by another nonconsenting person who is less than thirteen years old, where the actor is at least four years older than the child. *N.J.S.A.* 2C:14–4b.

Nudity is a third-degree offense if observed by a child less than sixteen years old if such nudity causes harm to the child, that is,

---

[6] *See also State v. Miller,* 264 *N.J.Super.* 556, 624 *A.*2d 1387 (App.Div.1993) (affirming the dismissal of defendant petition for post-conviction relief following defendant's direct appeal).

debauches the morals of the child or causes the child to be abused or neglected. *N.J.S.A.* 2C:24-4a. Nudity by the parent or one who stands *in loco parentis* is a second-degree offense if it debauches the morals or causes the child to be abused or neglected. *N.J.S.A.* 2C:24-4a. Thus, the *actus reus* in the instant matter is the same and is proscribed by both statutes within *N.J.S.A.* 2C, but the effect on the child sought to be protected by the statutes determines the degree of the offense.

■ Our special inquiry questioned the prosecution of defendant's nudity under both lewdness, *N.J.S.A.* 2C:14-4b(1), and endangering the welfare of children, *N.J.S.A.* 2C:24-4a. The indictment in this case charges two separate types of criminal behavior. A fourth-degree conviction for lewdness requires observation by a child of defendant's lewd acts. A conviction for endangering the welfare of children requires observation by a child of defendant's conduct, and that the child's morals would be impaired or debauched by that conduct. Therefore, because the statutes proscribe two distinct types of behavior, and require distinct proofs, we hold that a defendant may be prosecuted under and convicted under both *N.J.S.A.* 2C:14-4 as a fourth-degree offense and *N.J.S.A.* 2C:24-4a as a third-degree offense provided the evidence supports both distinct charges. The resolution of the issue before us, however, should not be based only on the question of sufficiency of evidence but, rather, requires consideration of the interplay between adequacy of evidence and statutory construction.

The dissent takes the position that where the defendant's culpable conduct is entirely embraced by *N.J.S.A.* 2C:14-4b(1) and although the State fails to prove that that conduct did impair or debauch the morals of the child, the defendant may nevertheless be convicted of the third-degree crime of endangering the welfare of a child pursuant to *N.J.S.A.* 2C:24-4a. The rationale seems to be that a jury would always be justified in finding beyond a reasonable doubt that the act of indecent exposure, as precisely defined by the lewdness statute and completely subsumed within

that definition, also constitutes the third-degree endangering crime because the mere act of indecent exposure inherently and inevitably has a tendency to impair and debauch the morals of a minor whether it has in fact been specifically proved to have done so.

If the dissent is correct, then there would be no fourth-degree lewdness conviction that would not also, *ipso facto*, sustain a third-degree endangering conviction. That is not what the Legislature intended in its 1992 amendment of *N.J.S.A.* 2C:14–4. It seems that the Legislature then made a careful and deliberative decision that the mere act of exposure, with nothing more, if observed or likely to be observed by a child younger than thirteen years old, should constitute a fourth-degree crime — — — not a third-degree crime. To be sure, an act of exposure may well constitute the third-degree crime of endangering, but in order to do so, there must be proof either that the act in some way went beyond a mere exposure or that it did, in fact, have more than a theoretical capacity to have impaired or debauched the child's morals. Any other construction of *N.J.S.A.* 2C:14–4 would render it a nullity for any purpose other than an unfettered exercise of prosecutorial discretion.

It is clear, as the Criminal Code provides, that a defendant may not be convicted of two offenses based on the same conduct if "[t]he offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." *N.J.S.A.* 2C:1–8a(4). The Code also provides, in the second paragraph of *N.J.S.A.* 2C:1–8a(4), that the "determination barring multiple convictions shall be made by the court after verdict or finding of guilt." That is, however, not the issue here. The issue here is, rather, whether the third-degree crime should ever have gone to a jury in the first place. In the absence of any proof of conduct by the actor or effect on the victim beyond that comprehended by *N.J.S.A.* 2C:14–4, it should not have.

B.

The State adduced sufficient evidence to permit a jury to convict defendant of a fourth-degree violation of lewdness, *N.J.S.A.* 2C:14-4b(1). However, the State did not present any evidence that defendant's conduct would tend to debauch the morals of children as is required to convict under *N.J.S.A.* 2C:24-4a.

We note that a conviction for endangering the welfare of children requires a showing that defendant's conduct tends to debauch the morals of children. "It is not necessary for the State to prove ... that the child was not debauched '[prior to the act], or his morals more impaired after the act than they were before. The statute forbids the performance of acts which tend to debauch the child or impair his morals—whether they actually did so is immaterial." *State v. Raymond,* 74 *N.J.Super.* 434, 438, 181 *A.*2d 515 (App.Div.1962), *appeal dismissed,* 39 *N.J.* 241, 188 *A.*2d 305 (1963) (construing *N.J.S.* 2A:96-3, the predecessor statute to *N.J.S.A.* 2C:24-4a).

Here, the only evidence presented by the State, aside from the testimony of each victim, was the very limited testimony of one victim's mother, T.W. The following colloquy was presented:

Q. Did she tell you about what happened to her on October 2nd, 1996?

A. Yes, she did.

Q. What did she say happened?

A. She told me that the man across the street was standing naked in front of the window and that he was posing for them.

Q. After you learned that information, what, if any this did you do, [T.W.]?

A. Well, at first I didn't know whether it was illegal or not. I knew it was disgusting, but I didn't know if it was illegal. So I called a friend of mine that works for the Cape May Police Department and I asked to get some clarification on it, and then I talked to [M.M.'s] mother to let he know that I thought we needed to keep the girls away from there and—

Q. Did you have an opportunity to speak [M.M.] and [M.R.K.] at that time?

A. Yes, I did because at first I wanted to confirm before going to the police that— exactly the story. I wanted to make sure that it wasn't an accident that they saw him, but they told me explicitly that he was posing and waving to them and that he had been doing it for a couple of weeks.

Q. I have no further questions, Your Honor. Thank you.

Based upon this very limited testimony, and in the absence of any expert opinion or any evidence offered by a representative of the Division of Youth and Family Services, the judge instructed the jury:

> The third element, which I will define for you, must also have been done knowingly; and that is, that the sexual conduct was engaged knowing it would impair or debauch the morals of the children. *Sexual conduct which would impair or debauch the morals of a child is conduct which tends to corrupt, mar, or spoil the morals of a child under 16 years of age.* The law provides that sexual conduct would impair or debauch the morals of the child. It is not necessary to show that the sexual conduct actually resulted in impairing or debauching the morals of a child.

> [emphasis added.]

The scant evidence presented at trial does not indicate that defendant's conduct—standing nude in front of a window in his house—would tend to "corrupt, mar, or spoil the morals" of the victims. We thus conclude the trial judge erred in failing to *sua sponte* dismiss this count of the indictment.

## C.

The trial judge charged the jury, in pertinent part, as follows with reference to count two of the indictment charging third-degree endangering the welfare of the children, *N.J.S.A.* 2C:24–4a:

> Now the second count of the indictment charges endangering the welfare of a child. The defendant is charged in the indictment with—with that offense, and the statute which makes that a crime reads as follows: Any person who engages in sexual conduct which would impair or debauch the morals of a child is guilty of a crime. In order to find the defendant guilty of this crime, the State is required to prove beyond a reasonable doubt the following elements: One, that the victim or victims were children under the age of 16; two, that the defendant knowingly engaged in sexual conduct; three, that such conduct would impair or debauch the morals of a child or children.

> Now as to the first element, that the victims were children, the use of the term "child" in the statute means any person under the age of 16 at the time of the offense. Now proof of the first element was shown by the proof of the ages of the alleged victims in this case.

> As to the second element, that the defendant knowingly engaged in sexual conduct, sexual conduct is a phrase which includes various prohibited acts. The term "sexual conduct" is a phrase which includes acts which would include, also, the offense charged in count one [lewdness] and/or the offense charged as al—an

alternative to count one, which I just—both of which I just defined for you moments ago. You will recollect that this second element must be shown to have been done knowingly.

The third element ... [is] that the sexual conduct was engaged knowing it would impair or debauch the morals of the children....

Now as I have instructed you, both the second and third elements of the offense require the defendant acted knowingly. A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that the conduct—his conduct is of that nature or that such circumstances exist or the person is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if the person is aware that it is practically certain that the conduct will cause such a result.

In order to find the defendant guilty, the State must prove each and every element of the offense as I have just defined it for you beyond a reasonable doubt. If you find the defendant has failed to prove any of—or all of the elements of the offense beyond a reasonable doubt, then you must find the defendant not guilty.

Although the judge's charge mirrors in part the Model Jury Charge for endangering the welfare of a child, we find the judge's charge and the Model Jury Charge both lack sufficient clarity and in fact both conflict with our analysis. The Model Jury Charge [7] explains "sexual conduct" by utilizing a reference to "nudity, if alone or depicted for the purpose of sexual stimulation or gratification of any person who may view it" as defined in *N.J.S.A.* 2C:24–4b(1)(i), a section of the statute designed to pro-

---

[7] The judge read, for the most part, the exact language of the Model Jury Charge, revised on May 24, 1993, which provides in pertinent part:

As to the second element, that the defendant knowingly engaged in sexual conduct, sexual conduct is a phrase which includes various prohibited acts. For example, "sexual conduct" includes causing or permitting a child to engage in a prohibited sexual act or the simulation of a prohibited sexual act. A prohibited sexual act, itself, includes sexual intercourse ... nudity, if alone or depicted for the purpose of sexual stimulation or gratification of any person who may view it. "Sexual conduct" also includes sexual contact. Sexual contact means an intentional touching by the defendant, either directly or through clothing, of the victim's intimate parts. Intimate parts means the following body parts: sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person. An intentional touching means a knowing or conscious touching and is to be distinguished from an accidental touching. An intentional act is an act done with the purpose to accomplish it.
[footnotes omitted].

scribe child pornography. The Model Jury Charge fails to recognize the distinction and differences between *N.J.S.A.* 2C:24–4a and *N.J.S.A.* 2C:24–4b(2) to (5). *N.J.S.A.* 2C:24–4b(2) to (5) proscribe child pornography, whereby a person is prohibited from "caus[ing] or permit[ing] a child to engage in a prohibited sexual act or in the simulation of such an act." *N.J.S.A.* 2C:24–4b(1) states that "prohibited sexual act" as used in that subsection includes nudity "if depicted for the purpose of sexual stimulation or gratification of any person who may view such depiction." However, the term "prohibited sexual act" appears only in *N.J.S.A.* 2C:24–4b(2) to (5), not in *N.J.S.A.* 2C:24–4a. Thus, the definition of nudity in *N.J.S.A.* 2C:24–4b(1)(i) applies only to nudity on the part of a child. The Model Jury Charge, by incorporating the definition of "sexual conduct" by reference to nudity as described in *N.J.S.A.* 2C:24–4b(1)(i), is particularly problematic where, as here, the "sexual conduct" charged is predicated upon defendant's own nudity.

"Accurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial." *State v. Concepcion*, 111 *N.J.* 373, 379, 545 *A.*2d 119 (1988) (citing *State v. Butler*, 27 *N.J.* 560, 595, 143 *A.*2d 530 (1958)). The jury instructions must explain, in comprehensive terms, the relevant law applicable to the facts to be determined by the jury. *Ibid.* (citing *State v. Green*, 86 *N.J.* 281, 287–88, 430 *A.*2d 914 (1981)). Model jury charges, although helpful, do not always provide appropriate jury instructions for all cases. *Ibid.* The deficiency of a model charge may be remedied by "mold[ing] the instruction in a manner that explains the law to the jury in the context of the material facts of the case." *Ibid.* (citations omitted). *See also State v. Hogan*, 297 *N.J.Super.* 7, 15–16, 687 *A.*2d 751 (App.Div.), *certif. denied*, 149 *N.J.* 142, 693 *A.*2d 111 (1997); *State v. Hinds*, 278 *N.J.Super.* 1, 14, 650 *A.*2d 350 (App.Div.1994), *rev'd on other grounds*, 143 *N.J.* 540, 674 *A.*2d 161 (1996).

It would be helpful for a judge to tailor the Model Jury Charge to avoid a confusing reference to nudity when explaining the term

"sexual conduct." The conviction for endangering the welfare of the child warrants reversal.

### D.

Our *sua sponte* inquiry also implicates a question of merger where a defendant is convicted of both endangering the welfare of a child, *N.J.S.A.* 2C:24–4a, and lewdness, *N.J.S.A.* 2C:14–4b(1).

In *D.R., supra,* 109 *N.J.* 348, 537 *A.*2d 667, the Supreme Court reviewed defendant's conviction on three counts charging sexually abusive conduct with his two-and-one-half-year-old granddaughter. We had concluded that defendant's conviction for endangering the welfare of a child, *N.J.S.A.* 2C:24–4a must merge with defendant's conviction for aggravated sexual assault, *N.J.S.A.* 2C:14–2a, and sexual assault, *N.J.S.A.* 2C:14–2b. 214 *N.J.Super.* 278, 518 *A.*2d 1122 (App.Div.1986). Citing its earlier decision in *State v. Miller,* 108 *N.J.* at 122, 527 *A.*2d 1362 (1987), where defendant was convicted of endangering the welfare of a child, *N.J.S.A.* 2C:24–4(a) and aggravated sexual assault of his five-year-old daughter, the Supreme Court in *D.R.* noted:

> In *Miller,* we held that "the crime of endangering the welfare of a child is aimed not only at specific conduct but also at the violation of the duty that a parent owes to a child." 108 *N.J.* at 118–19, 527 *A.*2d 1362. We noted that the critical factor in the merger question presented in *Miller* derived from the "different interests protected by the statutes violated," *id.* at 118, 527 *A.*2d 1362, and that although both convictions were "based on the same general conduct," the child endangerment conviction was "also directed at the defendant's violation of his parental duty." *Id.* at 120–21, 527 *A.*2d 1362. Our reasoning and holding in *Miller* applies to the circumstances of this case and would preclude merger of the conviction under *N.J.S.A.* 2C:24–4(a). The same result would be reached by application of the relevant provision of the Code of Criminal Justice, *N.J.S.A.* 2C:1–8(a).
>
> [109 *N.J.* at 377, 537 *A.*2d 667.]

Despite the decision in *D.R.* and *Miller,* another panel of this court in *Still, supra,* 257 *N.J.Super.* 255, 608 *A.*2d 404, concluded that where a defendant is "not a parent" and is "not even the baby sitter," and "no legal duty is asserted to have been owed by [defendant] to the victim," then a conviction for sexual assault and

fourth-degree endangering the welfare of a child do merge. *Id.* at 259–60, 608 *A.*2d 404.

■ Here, the jury convicted defendant of both counts of the indictment. As noted, the judge sentenced defendant on each count: four years under *N.J.S.A.* 2C:24–4a, and a concurrent term of eighteen months under *N.J.S.A.* 2C:14–4b(1). Although we reverse defendant's conviction for violating *N.J.S.A.* 2C:24–4a due to an insufficiency of evidence, even were we to have affirmed his conviction, we would have concluded that the separate conviction for lewdness should have merged with the conviction for endangering the welfare of children. *See Still, supra,* 257 *N.J.Super.* at 259, 608 *A.*2d 404.

### III

We have carefully reviewed defendant's second and third points of error, the arguments of counsel, and the applicable law, and conclude that both arguments are clearly without merit and a written opinion would have no precedential value. *See R.* 2:11–3(e)(2). We add these additional comments.

■ *N.J.R.E.* 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

Evidence of other crimes, wrongs, or acts may not be introduced into evidence to prove a defendant's criminal disposition as a basis for establishing guilt of the crime charged. *State v. Nance,* 148 *N.J.* 376, 386, 689 *A.*2d 1351 (1997); *State v. Stevens,* 115 *N.J.* 289, 293, 558 *A.*2d 833 (1989). Such evidence must meet a four-prong test for admissibility: (1) the evidence must be relevant to a material issue in dispute; (2) the other crime, wrong, or act must be similar in kind and reasonably close in time to the crime presently charged; (3) the evidence of the other crime, wrong, or act must be clear and convincing; and (4) the probative value of

such evidence must not be outweighed by the prejudice to the defendant. *State v. Cofield,* 127 *N.J.* 328, 338, 605 *A.*2d 230 (1992).

Here, Judge Alvarez carefully considered the admissibility of evidence of defendant's two prior convictions for lewdness. She correctly concluded that defendant's first conviction in 1977 was remote, thus precluding its use. *Ibid.* She correctly concluded that defendant's conviction, pursuant to a guilty plea in 1996, met each of the four criteria delineated in *Cofield. Ibid. See also State v. Covell,* 157 *N.J.* 554, 571, 725 *A.*2d 675 (1999).

Additionally, the trial judge carefully patterned the charge to the jury to conform to the dictates enunciated in *State v. Cusick,* 219 *N.J.Super.* 452, 467, 530 *A.*2d 806 (App.Div.), *certif. denied,* 109 *N.J.* 54, 532 *A.*2d 1118 (1987). The *Cusick* jury instruction as to *N.J.R.E.* 404(b) evidence was specifically approved in *State v. G.S.,* 145 *N.J.* 460, 471–72, 678 *A.*2d 1092 (1996). We can find no error in the jury instruction in this case.

IV

Defendant contends he was provided ineffective assistance of counsel. The test for ineffective assistance of counsel is two-pronged: (1) counsel's performance must be deficient and (2) the deficient performance must prejudice the defense so as to create "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington,* 466 *U.S.* 668, 694, 104 *S.Ct.* 2052, 2068, 80 *L.Ed.*2d 674, 698 (1984). *Accord State v. Fritz,* 105 *N.J.* 42, 52, 519 *A.*2d 336 (1987).

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland, supra,* 466 *U.S.* at 688–89, 104 *S.Ct.* at 2065, 80 *L.Ed.*2d at 694. Although defendant's trial counsel may have failed to object to hearsay evidence, we conceive that failure to be harmless in light of the age of the victims and the sensitive nature

of each victim's testimony. Viewed in its entirety, defendant's trial counsel provided defendant with a vigorous defense and quite adequately represented defendant in the pre-trial motion and at sentencing. We therefore reject defendant's fourth point of error. Our conclusion shall not deny defendant his right to assert a petition for post-conviction relief predicated upon allegations that lie outside the record. *State v. Preciose*, 129 *N.J.* 451, 609 *A.*2d 1280 (1992).

V

Defendant's conviction on count one is affirmed. Defendant's conviction on count two is reversed. Because defendant's sentence on count one may have been influenced by defendant's conviction and sentence on count two, we remand to the trial judge for reconsideration of the sentence imposed on count one and for correction of the judgment of conviction.

STEINBERG, J.A.D., concurring in part; dissenting in part.

I respectfully dissent from that portion of the opinion that reverses defendant's conviction for third-degree endangering the welfare of a child. The majority concludes that the State did not present any evidence that defendant's conduct would tend to impair or debauch the morals of a child as is required to convict under *N.J.S.A.* 2C:24–4(a). Like its predecessor, *N.J.S.A.* 2A:96–3, the statute is designed to protect children under the age of sixteen. *State v. White*, 105 *N.J.Super.* 234, 236, 251 *A.*2d 766 (App.Div.), *certif. denied*, 54 *N.J.* 242, 254 *A.*2d 789 (1969); *State v. Raymond*, 74 *N.J.Super.* 434, 438, 181 *A.*2d 515 (App.Div.1962), *appeal dismissed*, 39 *N.J.* 241, 188 *A.*2d 305 (1963). The majority correctly recognizes that it is not necessary for the State to prove that defendant's acts did, in fact, impair or debauch the morals of a minor. Yet the majority goes on to suggest that nudity only becomes a third-degree offense (or second-degree offense depending on the relationship of the actor to the victim) if the act of nudity, in fact, either causes harm to the child, or debauches the

morals of the child, or causes the child to be abused or neglected, further concluding that the effect on the child sought to be protected determines the degree of the offense. *State v. Hackett,* 323 *N.J.Super.* at 474–75, 733 *A.*2d at 562–63 (App.Div.1999). These conclusions are inconsistent with our prior decisions that the statute is violated if defendant's conduct tends to impair or debauch the morals of a minor; it is not necessary that defendant's conduct in fact impaired or debauched the morals of the victim. *See State v. White, supra,* 105 *N.J.Super.* at 237, 251 *A.*2d 766; *State v. Raymond, supra,* 74 *N.J.Super.* at 438, 181 *A.*2d 515. Those cases were correctly decided and I see no reason to vary from them when the acts complained of consisted solely of nudity. *State v. Raymond, supra,* 74 *N.J.Super.* at 438, 181 *A.*2d 515. The statute forbids the performance of acts which *tend* to debauch the child or impair his morals. (Emphasis added.) *Ibid.* Nor does the statute require proof of physical contact or physical abuse. *State v. White, supra,* 105 *N.J.Super.* at 237, 251 *A.*2d 766.

In my view the victims' testimony that defendant, on more than one occasion, stood nude inside his home approximately five feet from his open front window enabling the victims to observe the entire front of his body was sufficient to present a jury question as to whether defendant's conduct tended to impair or debauch the morals of the victims. I respectfully part company with the majority's conclusion that "[t]he scant evidence presented at trial does not indicate that defendant's conduct—standing nude in front of a window in his house—would tend to 'corrupt, mar, or spoil the morals', of the victims" particularly in light of the judge's instructions that require the State to prove beyond a reasonable doubt that defendant knowingly engaged in sexual conduct and further required the State to prove, again beyond a reasonable doubt, that the sexual conduct was engaged in knowing it would impair or debauch the morals of the children. The judge specifically advised the jury that the sexual conduct which was the core of the charge of endangering the welfare of a child was the act of lewdness that had previously been charged to the jury. In that portion of the charge the judge instructed the jury that they must

be satisfied beyond a reasonable doubt that defendant exposed himself "under circumstances where he knew or reasonably expected that he would likely be observed" by the victims. The majority correctly concludes that defendant's nudity is conduct that falls within the meaning of "sexual conduct" or "conduct" proscribed by *N.J.S.A.* 2C:24–4(a). There was sufficient testimony for the jury to infer and conclude beyond a reasonable doubt that defendant's conduct had the capacity to impair or debauch the morals of the victims.

The majority concludes that the limited testimony of one victim's mother, T.W., regarding the complaint made to her, coupled with "the absence of any expert opinion or any evidence offered by a representative of the Division of Youth and Family Services", was insufficient to present a jury question and the judge was required to *sua sponte* dismiss that count of the indictment. *State v. Hackett, supra,* at 477–78, 733 *A.*2d at 564. As I have already noted, I believe there was sufficient evidence to present a jury question. It was not necessary for the victims to testify that they were offended, humiliated, embarrassed, or that their morals were impaired or debauched. *See State v. White, supra; State v. Raymond, supra.* Indeed, *White, supra,* and *Raymond, supra,* demonstrate that a conviction would stand even if the morals of these victims were not impaired or debauched provided the jury found beyond a reasonable doubt that defendant's conduct had the tendency to impair or debauch the morals of any child. Moreover, in *State v. South,* 136 *N.J.Super.* 402, 410, 346 *A.*2d 437 (App.Div. 1975), *certif. denied,* 69 *N.J.* 387, 354 *A.*2d 315 (1976), we held that evidence that defendant exposed himself to an eleven-year-old victim was sufficient to sustain a defendant's conviction for open lewdness and impairing the morals of a minor.

The majority observes that if the dissent is correct, "there would be no fourth-degree lewdness conviction that would not also, *ipso facto,* sustain a third-degree endangering conviction". The majority then concludes that that is not what the Legislature intended in its 1992 amendment of *N.J.S.A.* 2C:24–4. I disagree

with that conclusion. Prior to the amendment, when all acts of lewdness were disorderly persons offenses, an act of lewdness could also support a conviction for endangering the welfare of a child if a jury concluded, beyond a reasonable doubt, that defendant's conduct tended to impair or debauch the morals of a child. At the same time *N.J.S.A.* 2C:14-4 was amended to specifically provide that an actor, who exposes his intimate parts for the purpose of arousing or gratifying his sexual desire, or the sexual desire of any other persons, under circumstances where the actor knows or reasonably expects he is likely to be observed by a child who is less than thirteen years of age is guilty of a crime of the fourth-degree if the actor is at least four years older than the child, the Legislature also amended *N.J.S.A.* 2C:24-4(a), upgrading the crimes to second-degree and third-degree from third-degree crimes and fourth-degree crimes. Both amendments took effect on March 13, 1992. I cannot conceive that the Legislature, at the same time it made lewd conduct likely to be observed by a child under the age of thirteen a fourth-degree offense in order to be punished more severely, and made endangering the welfare of a child also subject to more severe penalties, also intended to make it more difficult to prosecute for endangering the welfare of a child when the acts giving rise to the prosecution consisted strictly of acts of lewdness.

The paramount question in every case in which conflicting interpretations of a statute are advanced is which interpretation more fully accords with the legislative intent. *State v. Galloway,* 133 *N.J.* 631, 658, 628 *A.*2d 735 (1993); *Brock v. Public Service Elec. & Gas Co.,* 290 *N.J.Super.* 221, 227, 675 *A.*2d 668 (App.Div. 1996), *rev'd on other grounds,* 149 *N.J.* 378, 693 *A.*2d 894 (1997). A court's duty in construing a statute is to determine the intent of the Legislature. *Jacobitti v. Jacobitti,* 135 *N.J.* 571, 579, 641 *A.*2d 535 (1994). In attempting to determine the legislative intent, the court should consider the statutory language, the policy behind the statute, concepts of reasonableness as well as legislative history. *Atlantic Commercial Gp. v. Dunham,* 303 *N.J.Super.* 122, 128, 696 *A.*2d 85 (App.Div.1997). The goal in statutory construction is to

determine the intent of the Legislature and to make sense of a statute. *Kenney v. Meadowview Nursing Center,* 308 *N.J.Super.* 565, 570, 706 *A.*2d 295 (App.Div.1998). Court's should avoid interpreting a statute in a manner that leads to an absurd, anomalous, or unreasonable result. *County of Camden v. South Jersey Port.,* 312 *N.J.Super.* 387, 396, 711 *A.*2d 978 (App.Div.), *certif. denied,* 157 *N.J.* 542, 724 *A.*2d 801 (1998). In interpreting a statute a court should read it sensibly and not arrive at a construction which distorts its true intent. *Stonehill Prop. Owners v. Vernon,* 312 *N.J.Super.* 68, 76, 711 *A.*2d 346 (App.Div.1998). Statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as consonant to reason and good discretion. *Matter of Adoption of N.J.A.C. 7:1I,* 149 *N.J.* 119, 128, 693 *A.*2d 97 (1997).

In my opinion the Legislature clearly set forth its intention when it amended *N.J.S.A.* 2C:14–4 and *N.J.S.A.* 2C:24–4(a) at the same time. In each instance the potential punishment for sexual conduct involving children became more severe, clearly evidencing the Legislature's intent to punish more severely those convicted of acts of sexual misconduct involving minors. The majority, rather than respecting that legislative intent, concludes that the Legislature made a careful and deliberative decision that the mere act of exposure, with nothing more, if observed or likely to be observed by a child younger than thirteen years old, constitutes solely the fourth-degree offense of lewdness, a fourth-degree crime—not the third-degree or second-degree crime of endangering the welfare of a child. I disagree. If the majority is correct we have the anomalous result that an act of exposure committed in front of a child less than thirteen years of age is a fourth-degree offense; however, if the actor exposes himself in front of a child over the age of thirteen but under the age of sixteen he is guilty of a crime of the third-degree. That clearly does not reflect the intent of the Legislature. In my view, the Legislature never intended to make exposure that is likely to be observed by a child less than thirteen less serious than exposure that is likely to be observed by a child older than thirteen, but less than sixteen. If the majority is

correct, does that also mean that an act of exposure that is likely to be observed by a child more than thirteen, but less than sixteen is only a disorderly persons offense? My answer is a resounding no. Again, that result would be absurd. While I agree with the majority that *N.J.S.A.* 2C:1–8(a)(4) provides that a defendant may not be convicted of two offenses based on the same conduct if the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct, I believe a defendant is amply protected by utilizing the flexible approach to merger and requiring that the fourth-degree conviction merge into the third-degree conviction. *See State v. Cole,* 120 *N.J.* 321, 327, 576 *A.*2d 864 (1990); *State v. Davis,* 68 *N.J.* 69, 81, 342 *A.*2d 841 (1975).

I also disagree with the majority's suggestion that expert opinion or evidence offered by the Division of Youth and Family Services was required due to the very limited testimony of T.W. This is not a case calling for scientific, technical, or other specialized knowledge in order to assist the jury to understand the evidence or to determine a fact in issue. *See N.J.R.E.* 702. A jury is perfectly capable of concluding, without the assistance of an expert, as to whether defendant's conduct tended to impair or debauch the morals of a child.

Finally, I agree with the majority's observation that the Model Jury Charge fails to recognize the distinction and differences between *N.J.S.A.* 2C:24–4(a) and *N.J.S.A.* 2C:24–4(b)(2) to (5). However, here, the judge's charge did not suffer from that infirmity since he specifically limited the jury's consideration of sexual conduct to the acts of lewdness that formed the basis of count one of the indictment.

For the reasons set forth above I would affirm defendant's conviction for third-degree endangering the welfare of a child.