# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2876-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

T.N.,

    Defendant-Respondent.

_____

Submitted August 27, 2025 – Decided September 3, 2025

Before Judges DeAlmeida and Chase.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 23-11-2124.

Theodore N. Stevens, II, Essex County Prosecutor, attorney for appellant (Frank J. Ducoat, Deputy Chief Assistant Prosecutor, of counsel and on the brief).

Jennifer N. Sellitti, Public Defender, attorney for respondent (Richard M. Stone, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

By leave granted, the State appeals from a March 18, 2025 Law Division order denying its motion to admit the forensic videotaped interview ("FVI") of C.H.[1] in its case in chief. For the following reasons, we reverse.

I.

On November 1, 2023, an Essex County Grand Jury returned an indictment against defendant for two counts of first-degree sexual assault, N.J.S.A. 2C:14-2(a)(1); four counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); three counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1); and two counts of third-degree terroristic threats, N.J.S.A. 2C:12-3(b).

The indictment stemmed from an August 2023 investigation that began when Newark Police were dispatched to a Washington Street address for a report of a sexual assault. Upon arrival, officers met with S.K., the mother of eight-year-old N.K. S.K. told the police that N.K. had disclosed to friends that a neighbor approached her and made her "suck it."

A few days later, on August 10, 2023, N.K. came to the Essex County Prosecutor's Office ("ECPO") and gave an FVI conducted by Agent Karen

---

[1] We utilize initials when referring to defendant, the complaining witnesses, and their family members, pursuant to N.J.S.A. 2A:82-46 and Rule 1:38-3(c)(9).

A-2876-24

Zambrano. N.K. advised that C.H. lived in the apartment below her with her stepfather (defendant). During the interview, N.K. explained that she and C.H. were playing with makeup when defendant asked both to come into the room with him. Both said no. Afterward, when N.K. was alone putting the makeup back in the room, defendant closed the door, grabbed her by the head, and then forced her to perform fellatio on him. He told N.K. not to tell anyone or he would kill her. N.K. disclosed that she saw him do the same thing to C.H.

The next day, detectives had C.H. report to the ECPO to provide a statement. C.H. stated that she lives with her mother, defendant, and younger brother. C.H. explained that she and N.K. were playing with makeup when the defendant came home and called N.K. to his room. N.K. went into defendant's room for five to ten minutes, and then she came out and did not want to play anymore. C.H. disclosed that the defendant then grabbed her buttocks and stated, "look at that big booty." He then brought her into his bedroom, pulled his pants down exposing his genitals, and told C.H. to "suck it." She then bent over and performed fellatio on him.

C.H. told the detectives that she previously reported defendant had touched her privates. Further investigation confirmed in May 2020, C.H.'s

3

mother, J.T., reported to police that C.H. had told her friend that defendant touched her private part.

As a result, in June 2020, C.H., then nine years old, was transported to the ECPO for an FVI. The FVI was also conducted by Agent Zambrano. During that interview, C.H. disclosed that in March 2020, defendant called C.H. into her mother's room and told her to close the door. He then told her to pull down her pants and underwear. Defendant then touched her privates and told her she "feels nice and sexy." C.H. disclosed that defendant had tried to have sex with her and he knew it was illegal.

C.H. also spoke about the relationship between her father, her paternal grandmother, her mother, and defendant. Specifically, she told Agent Zambrano that her grandmother "already didn't like [defendant] because she knew that my dad has loved me and she didn't want him to leave me." She went on to say about her grandmother, "I'm guessing she's trying to help -- she's trying to help [C.H.'s father] move back in with us, so yeah."

A short while later in the interview, C.H. was asked who she told about these allegations. C.H. stated that she told her father and grandmother, but no one else. C.H. also told Agent Zambrano that her father's sister is aware of the

4

allegations, even though she did not tell her aunt directly, because she knows that her grandmother told her aunt to "see if she could help out."

J.T. also provided a sworn statement in June 2020, detailing the above-mentioned events. J.T. stated that she had heard about the allegations after C.H. told a friend in late April. At that time, she claimed she spoke with C.H. who repeated the allegations of sexual abuse. She also told police that C.H.'s biological father had called her three weeks later after she found out about the incident to tell her that C.H. had repeated the allegations to him. She noted that C.H. had been urinating on herself since the divorce of her biological father. J.T. then claimed she asked defendant to check C.H. to see if she had urinated on herself.

Defendant also provided a statement, admitting that he touched C.H.'s private area, but claimed that he was just checking to see if she had urinated on herself. He was not charged at that time.

Before trial, the State filed a motion to admit the FVIs of C.H. from 2020 and N.K. from 2023 pursuant to N.J.R.E. 803(c)(27).[2] Agent Zambrano testified and the FVIs were played for the court at a Rule 104 hearing.

---

[2] C.H. was over twelve years old in 2023, so there was no motion to admit her second videotaped statement.

A-2876-24

After reciting the <u>Idaho v. Wright</u>[3] factors, the court determined that C.H.'s statement was not made spontaneously because it was scheduled after there was police involvement initiated by a third-party. Moreover, the court stated that it was unclear from the proofs put forward by the State, "how many days transpired between the first communication between the prosecutor's office and [J.T.]."

Next, the court determined that C.H.'s statement was internally consistent and this inured to the benefit of the prosecution. Although the court believed that C.H.'s description of the touching was appropriate for a child that age, it highlighted that the nine-year old used the words "triggered" and "depression." The court therefore determined that the terminology used was in equipoise.

The court next discussed issues it had with the trustworthiness of the statement. Specifically, the court was concerned about whether there were outside influences affecting the mental state of C.H. and her statement. The court emphasized the conflict between C.H.'s and J.T.'s statements regarding who the disclosure of the abuse was made to. Although it found no fault with the forensic interviewer, the court determined the factors were largely in equipoise and stated that because a tie goes to defendant, C.H.'s FVI would not

---

[3] 497 U.S. 805, 821-22 (1990).

be admitted in the State's case in chief.  However, the court admitted N.K.'s FVI. A confirming order was issued on March 24, 2025.

Thereafter, we granted the State leave to file this interlocutory appeal concerning C.H.'s 2020 FVI.

## II.

The governing legal standards are clear.  We review the trial court's evidentiary ruling for abuse of discretion.  State v. Harris, 209 N.J. 431, 439 (2012).  Moreover, under N.J.R.E. 803(c)(27), "the judge's factual findings are entitled to deference" as long as they are "supported by sufficient credible evidence in the record."  State v. P.S., 202 N.J. 232, 250 (2010) (quoting State v. Elders, 192 N.J. 224, 243 (2007)).  A trial court's discretionary decision to admit or exclude relevant evidence is reversible only if "the trial court palpably abused its discretion, that is, that its finding was so wide of the mark that a manifest denial of justice resulted."  State v. Carter, 91 N.J. 86, 106 (1982).

N.J.R.E. 803(c)(27), known as the tender years exception to the hearsay rule, governs out-of-court statements about sexual misconduct by a child less than twelve years old and states in pertinent part:

> A statement made by a child under the age of [twelve] relating to sexual misconduct committed . . . against that child is admissible in a criminal . . . case if (a) the proponent of the statement makes known to the adverse

7

party an intention to offer the statement and the particulars of the statement at such time as to provide the adverse party with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to Rule 104(a), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and (c) . . . (i) the child testifies at the proceeding . . . .

The tender years exception was adopted in recognition of the importance of the testimony of a child who is a victim of sexual misconduct, the potential reliability and credibility of the victim's spontaneous out-of-court statements, and the impact of the lapse of time and the stress of the courtroom setting on the child's ability to testify. State v. D.R., 109 N.J. 348, 358-60, 370-71 (1988).

In interpreting this evidence rule, our Supreme Court has made clear that

> [b]efore admitting a child's out-of-court statement pursuant to N.J.R.E. 803(c)(27), the trial court must make certain findings at a [N.J.R.E.] 104 hearing. The court must determine whether "on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy." N.J.R.E. 803(c)(27). The statement's admissibility is also conditioned on either the child testifying or, if the child is unavailable as a witness, on the presentation of "admissible evidence corroborating the act of sexual abuse." Ibid. . . .. The admissibility of a child's testimonial statement, therefore, will be conditioned on the child taking the stand. [P.S., 202 N.J. at 249] (noting that admissibility of child victim's statement is conditioned on not only "judicial finding of trustworthiness," but also "opportunity to cross-examine the child at trial." (quoting State v. R.B., 183

N.J. 308, 318 (2005)); see also State v. D.G., 157 N.J. 112, 124 (1999)).

[In re A.R., 234 N.J. 82, 102-03 (2018).]

The question of whether an out-of-court statement is trustworthy requires consideration of the totality of circumstances and an assessment of the sufficient reliability "based on the 'time, content and circumstances of the statement . . . .'" P.S., 202 N.J. at 249 (quoting D.G., 157 N.J. at 128). In Wright, the United States Supreme Court provided a list of factors to be considered by a trial judge in making such a determination. 497 U.S. at 821-22. The non-exhaustive list includes "spontaneity, consistency of repetition, lack of motive to fabricate, the mental state of the declarant, use of terminology unexpected of a child of a similar age, [the] interrogation and manipulation by adults." D.G., 157 N.J. at 125 (citing Wright, 497 U.S. at 821-22, 827).

Although the list is non-exhaustive, all factors considered must relate to "whether the child declarant was particularly likely to be telling the truth when the statement was made." Wright, 497 U.S. at 822. Our Supreme Court has recognized that the Wright factors are appropriate for guidance when doing a trustworthiness analysis under N.J.R.E. 803(c)(27). P.S., 202 N.J. at 249-50 (citing State v. Burr, 392 N.J. Super. 538, 570 (App. Div. 2007), modified on other grounds, 195 N.J. 119 (2008)).

9

The existence of a recording of the statement is also a factor to be weighed. P.S., 202 N.J. at 253. Additional factors to be considered with respect to whether an interview technique bears the hallmarks of reliability are "lack of investigatory independence, the pursuit of the interviewer of a preconceived notion of what happened to the child, the use of leading questions, and a lack of control for outside influences on the child's statements." Id. at 250 (quoting State v. Michaels, 136 N.J. 299, 309 (1994)).

III.

On appeal, the State asserts the trial court erred in ruling inadmissible nine-year-old C.H.'s 2020 FVI in which she described how she was sexually assaulted. They contend the statement was sufficiently trustworthy and satisfied all the elements of N.J.R.E. 803(c)(27). We agree.

We begin with the court's findings that the statement was not given spontaneously because the interview had been scheduled. Most, if not all, interviews are scheduled and this has very little to do with whether the statement is untrustworthy. The focus of spontaneity in the child's statement should be focused on how the disclosure was made to the interviewer, what questions were asked by the interviewer, and whether the disclosure was in response to leading questions, not if the interview was scheduled. As the court determined, Agent

A-2876-24

Zambrano did not lead C.H. or do anything to influence or embellish her disclosure. Here, based on the nature of the interview, the disclosures were spontaneous.

While the record does contain admissions by C.H. that her grandmother did not like defendant and that she wanted her son (C.H.'s natural father) to return to the household, there was no credible evidence of parental manipulation. Rather, it was mere speculation of influence by others which was not supported by the record.

Next, the court's reliance on the child having used the phrases "triggered" and "I have depression because of this" as inappropriate for her age and evidence of adult manipulation was a mistaken exercise of discretion. C.H. described what she meant by "triggered" as "[l]ike you['re] just shaking because something is about to explode." Just before that, she had explained that when defendant touched her private parts it made her "feel very uncomfortable" and it made her body feel "very wrong." In this context, it was speculation that this was evidence of manipulation.

Additionally, during a break in the interview, when C.H. was in the room by herself, she wrote on a piece of paper next to a picture of her deceased grandmother and fish, as well as her dad, that she was depressed. This is not

A-2876-24

evidence of undue influence. Here, C.H. did not use these terms to describe the assault. Rather, the terms used to describe the assault were found to be age appropriate by the trial court.

When considering a hearsay statement under N.J.R.E. 803(c)(27), the judge is to analyze the inherent trustworthiness of the statement. See Burr, 392 N.J. Super. at 569. The consistency factor of the N.J.R.E. 803(c)(27) test focuses on whether the child has given consistent accounts of the abuse. In making its findings, the court highlighted that the statement possessed specific factors of reliability including consistency over time, age-appropriate language accurately describing age-inappropriate conduct, and the lack of any solicitation or prompting by Agent Zambrano. Moreover, the court did not find any evidence that C.H. was untruthful.

C.H.'s statement that she was touched was corroborated by defendant himself, who admitted to touching C.H.'s private area but claimed that he was checking to see if she had urinated on herself. Additionally, J.T. corroborated her daughter's statement. As such, there was "sufficient indicia of reliability to justify admission." See D.R., 109 N.J. at 351 (citation omitted). Based on these corroborations the court mistakenly relied on the conflict between C.H.'s and

J.T.'s statements regarding who the disclosure of the abuse was made to find that the FVI would not be admissible.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

13                                                          A-2876-24